558 So.2d 284 (1990)
Lillie Mae EAGLIN, Plaintiff-Appellant,
v.
CHAMPION INSURANCE COMPANY, Defendant-Appellee.
No. 88-1186.
Court of Appeal of Louisiana, Third Circuit.
March 14, 1990.
*285 Francis E. Mire, Lake Charles, for plaintiff-appellant.
Michael Cagle, Lake Charles, for defendant-appellee.
Before DOUCET, LABORDE and KNOLL, JJ.
LABORDE, Judge.
The only issue raised by this appeal is whether the trial court erred in holding that a policy of automobile liability insurance issued by defendant, Champion Insurance Company (Champion), to Alex Trahan had been effectively cancelled prior to June 13, 1987. We find error in the decision of the trial court. We reverse.

FACTS
On June 13, 1987, at approximately 1:15 p.m., a vehicle driven by the plaintiff, Lillie Mae Eaglin, was rear-ended by a pickup truck owned and operated by Alex Trahan. The accident occurred while the plaintiff was stopped at the traffic light controlling the intersection of Enterprise Boulevard and Broad Street in Lake Charles, Louisiana. The investigating officer, Paul Charles, testified at trial that when he arrived at the scene he observed that Mr. Trahan appeared to be intoxicated. Mr. Trahan was taken into custody and a breath analyzer test was administered to him. The breath analyzer test yielded a reading of .18%.
The plaintiff sustained injuries as a result of the collision and filed a claim with Champion, the alleged insurer of Mr. Trahan. Champion refused to pay the claim, contending that the policy had been cancelled as of March 7, 1987. This lawsuit for damages followed.
It is undisputed that Alex Trahan had purchased liability insurance from Champion and financed his premiums through a premium finance company, United Financial Service of Baton Rouge, Inc. (United Financial). It is also undisputed that in the premium finance agreement Alex Trahan gave United Financial power of attorney to cancel the insurance policy for non-payment of premiums. However, the parties to this lawsuit have differing views as to whether or not the policy of insurance had been effectively cancelled in accordance with the procedural steps mandated by LSA-R.S. 9:3550. The trial court held that the requirements of LSA-R.S. 9:3550 had been met and that the policy had been cancelled prior to the date of the accident. This holding is now the subject of the plaintiff's appeal.

CANCELLATION OF THE POLICY UNDER LSA-R.S. 9:3550
LSA-R.S. 9:3550 sets forth the procedures an insurance premium finance company must follow to validly cancel an insurance policy. It provides in pertinent part that:
"G. Insurance contracts may be cancelled upon default as follows:
(1) When a premium finance agreement contains a power of attorney enabling the insurance premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be cancelled by the insurance premium finance company unless such cancellation is effectuated in accordance with this Subsection.
(2) Upon default of insurance premium contract by the debtor, the premium finance company may mail a notice of cancellation to the insured, at his last known address as shown on the records of the insurance premium finance company. A copy of the notice of cancellation of the insurance contract shall also be mailed to the insurance agent negotiating the related insurance contract whose name and place of business appears on the premium finance agreement. Such notice of cancellation shall show the name of any governmental agency, mortgagee or third party also requiring notice of cancellation as shown on the insurance premium finance contract.

*286 (3) Ten days after notice of cancellation has been mailed to the insured, if the default has not been cured, the insurance premium finance company may thereafter effect cancellation of such insurance contract or contracts by mailing to the insurer a copy of the notice of cancellation together with a statement certifying that:
(a) The premium finance agreement contains a valid power of attorney as provided in paragraph (1) above;
(b) The premium finance agreement is in default and the default has not been timely cured;
(c) Upon default, a notice of cancellation was mailed to the insured as provided in paragraph (2) above, specifying the date of mailing by the premium finance company to the insured; and
(d) Copies of the notice of cancellation were mailed to all persons shown by the premium finance agreement to have an interest in any loss which may occur thereunder, specifying the names and addresses of any governmental agencies, mortgagees or third parties to whom the insurance premium finance company has sent notice of cancellation.
Upon receipt of such notice of cancellation and statement from the premium finance company, the insurer shall be entitled to consider that cancellation of the insurance contract or contracts has been requested by the insured but without requiring the return of the insurance contract or contracts and the insurer may proceed to cancel such contract or contracts as provided in R.S. 22:637. The effective date of cancellation shall be as of 12:01 A.M. on the tenth day after the date of mailing of the notice of cancellation as shown in said statement furnished to the insurer by the premium finance company."
This Court in Britten v. Reavis, 503 So.2d 1149 (La.App.3d Cir.), writ denied, 506 So.2d 1232 (La.1987), found the steps in LSA-R.S. 9:3550(G) to be mandatory, stating that:
"[s]trict adherence to the statutory procedure for exercising the power of attorney and effecting cancellation of a policy by a finance company is necessary...."
As there is no evidence that the premium finance company mailed a notice of cancellation to the insured in the case sub judice, we find that the statutory procedure of subsection (G) was not complied with and therefore hold that the policy of insurance was not validly cancelled prior to the accident.
A copy of the notice of cancellation was filed into the record. It is addressed to Alex Trahan, dated February 24, 1984, and lists the effective date of cancellation as March 7, 1987. Champion, in brief, asserts that the notice was mailed to the insured on February 24, 1987; however, there is no evidence in the record to support this claim. Emily Bowman, a cancellation clerk employed by United Financial, stated in her deposition that she had no knowledge of whether or not the notice of cancellation was sent to Alex Trahan. Additionally, Pamela Stewart, a supervisor of the cancellation department of United Southern Underwriters (the managing general agent of Champion), testified at trial that she had no personal knowledge that the insured was mailed a notice of cancellation.
The only evidence which would tend to establish the date on which the notice was sent to the insured is provided in the defendant's answer to interrogatories propounded by the plaintiff. In its answer to interrogatory number six, the defendant avers that the notice of cancellation was mailed to Alex Trahan on March 3, 1987. If we are to accept this as being the correct date, even though there is no evidence in the record to establish this fact, then we are faced with the problem of ascertaining whether United Financial waited the statutory ten days after mailing the notice before effecting cancellation of the policy. Under LSA-R.S. 9:3550(G)(3), a premium finance company must wait ten days after mailing the cancellation notice to the insured, and if the default has not been cured within that time period, it may effect cancellation of the policy by mailing the insurer a copy of the notice of cancellation, *287 along with a policy cancellation statement. Pamela Stewart testified that United Southern Underwriters received the notice of cancellation, together with the statement on March 7, 1987. She later changed her testimony to indicate that these documents were received a "couple" days later. We find this testimony to be inconclusive and unpersuasive, and therefore determine that there is no evidence, even if March 3, 1987 is accepted as the correct date, to indicate that United Financial waited the statutory ten days after mailing the notice of cancellation before effecting cancellation of the policy.
After a careful review of the evidence, we cannot say that the defendant has proven to this court's satisfaction when or if United Financial mailed a cancellation notice to the insured in compliance with LSA-R.S. 9:3550. Consequently, we find that the policy of insurance issued by Champion to Alex Trahan was in effect at the time of his accident with the plaintiff.
The defendant makes two arguments to the effect that even if Alex Trahan never received a cancellation notice, it can not be held liable for the plaintiff's injuries. The defendant first contends that under LSA-R.S. 22:637, the insurer has no obligation to provide notice of cancellation to the insured. We find, however, that this argument misses the mark, as the issue is whether the premium finance company sent the cancellation notice, as required by LSA-R.S. 9:3550, and not whether the insurer sent it. The defendant's other argument is that an insurer may consider the policy cancelled when the premium finance company certifies cancellation, regardless of any defects in the cancellation process. As the requirements of LSA-R.S. 9:3550 have been held to be mandatory, we determine that any defect in this process results in an ineffective cancellation of the policy. See Britten, supra; Dairyland v. Marks, 468 So.2d 841 (La.App. 1st Cir.1985).

LIABILITY OF CHAMPION
The evidence adduced at trial establishes that Alex Trahan rear-ended the plaintiff's vehicle while she was stopped at the intersection. It is a matter of hornbook law that a motorist is presumed to have been negligent if he collides with the rear end of a vehicle preceding his vehicle and has the burden of exculpating himself from the inference of negligence. Security Timber & Land Co. v. Reed, 398 So.2d 174 (La.App.3d Cir.1981); Tidwell v. Oceans Systems, Inc., 356 So.2d 466 (La. App. 1st Cir.1977). We determine that the defendant has not met its burden of proving that Mr. Trahan was free from fault. Mr. Trahan ran into the back of the plaintiff's vehicle, which was properly stopped at the traffic signal. Officer Paul Charles testified that the road conditions were wet that day; however, we do not think this evidence in itself is exculpatory. Quite simply, we conclude that Mr. Trahan was negligent and that this negligence was the sole cause of the accident.
At trial, the defense counsel elicited testimony from the plaintiff to the effect that she was not wearing her seat belt at the time of the collision. Presumably, this testimony was elicited by the defendant for the purpose of proving that the failure of the plaintiff to use a seat belt contributed to her injuries. The plaintiff testified that she was driving a vehicle owned by her daughter and that the seat belts in that vehicle were not working; moreover, it is well-established that the failure to wear a seat belt does not constitute contributory negligence. Hammer v. City of Lafayette, 502 So.2d 301 (La.App.3d Cir.1987); Benson v. Seagraves, 445 So.2d 187 (La.App.3d Cir.), writ denied, 447 So.2d 1071 (La.1984).

DAMAGES
The plaintiff testified that right after the two vehicles collided she passed out and didn't regain consciousness until she was being transported to Lake Charles Memorial Hospital. She was admitted to the hospital and was treated by Dr. Dean Moore. Dr. Moore stated at trial that the plaintiff complained of severe headaches, severe pain in her neck and shoulders as well as dizziness. His diagnosis was cerebral concussion and a cervical strain injury. Dr. Moore hospitalized the patient for five *288 days and prescribed pain pills, heat treatments, muscle relaxers and bed rest. Dr. Moore saw the plaintiff again a week after her discharge and noted that she complained of headaches, neck pains and lower back pains. He recommended two weeks of therapy treatment. The plaintiff underwent this therapy, but never returned to Dr. Moore for a follow up visit.
Dr. Carol Beutler, a chiropractor, also saw the plaintiff. Dr. Beutler testified that the plaintiff complained of severe neck pains and headaches. She prescribed therapy which consisted of electrical muscle stimulation, moist hot packs and manipulation of the spine. The plaintiff visited Dr. Beutler a total of four times.
In her testimony at trial the plaintiff stated that she still suffers from headaches and neck pain. She claimed that the pain limits her ability to perform housework and prevents her from engaging in activities that she enjoys, such as taking recreational walks and dancing.
In view of the plaintiff's injuries, we think that $6,361.05 in general damages should adequately compensate her. The plaintiff's special damages were not contested at trial and consist of the following:

Ambulance $ 125.00
Dr. Dean Moore $ 325.00
England-Masse Clinic (Dr. Beutler) $ 600.30
Lake Charles Memorial Hospital $2,588.65
 _________
 Total $3,638.95

Hence, we award the plaintiff $3,638.95 in special damages. When the general and special damage awards are combined, the plaintiff's total damage award comes to $10,000.00, which is Champion's policy limits.

EXEMPLARY DAMAGES
The plaintiff contends that, under LSA-C.C. art. 2315.4, she is entitled to recover punitive damages against the defendant. LSA-C.C. art. 2315.4 states that:
"In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries."
A careful reading of Champion's policy reveals that under the liability section, subparagraph (m), exemplary or punitive damages are expressly excluded from coverage. Subparagraph (m) provides:
"the sums which the insured shall become legally obligated to pay as damages under part one (1) [liability] shall not include any part of judgment assessed as punitive or exemplary damages."
Accordingly, the plaintiff can not recover article 2315.4 damages under Champion's policy.
For the reasons assigned the judgment of the trial court is reversed.
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the plaintiff, Lillie Mae Eaglin, and against the defendant, Champion Insurance Company, for the sum of $10,000.00, together with legal interest from the date of judicial demand until paid. Defendant is cast for all costs.
REVERSED AND RENDERED.