LINDSAY, Judge.
The defendant, Sovereign Fire and Casualty Insurance Company (Sovereign), appeals a trial court decision in favor of the plaintiff, Lori F. Summerville, allowing her to recover Sovereign’s $10,000 policy limit, following injuries which she sustained in an automobile accident. The trial court rejected Sovereign’s claim that the policy had been cancelled prior to the accident for nonpayment of the premiums. For the following reasons, we reverse the trial court judgment.
FACTS
On March 17, 1988, Stan Summerville, husband of the plaintiff, Lori F. Summer-ville, went to Advanced Insurance Planning Agency to obtain automobile insurance. Advanced secured insurance from Sovereign Fire and Casualty. Stan Summerville made a down payment of $125 on the policy premium and then financed the remainder of the premium with LRC Financial Services which later became Northshore Financial Services. Under the agreement, the finance company paid the insurance premium in full to Sovereign Fire and Casualty. Summerville was to make reimbursement payments to Northshore, the premium finance company, by the 20th of each month and a late charge was to be incurred if the payment was not made by the 30th of each month. Also, under the terms of the financing agreement, the premium finance company was given a power of attorney by Stan Summerville, allowing it to cancel the insurance policy if he defaulted on payment of the premiums.
The payment which was due on April 20, 1988, was paid by check on May 2, 1988. This payment was accepted by Northshore.
On June 10, 1988, Summerville wrote a check for the premium payment due on May 20, 1988, but this payment was not actually mailed until June 15, 1988. This check was not accepted by Northshore. Northshore claims that on June 3, 1988, not having received the payment due on May 20, 1988, Stan Summerville was notified by mail that he was in default for nonpayment under the terms of the premium finance agreement and that if the default was not cured by June 13, 1988, the insurance policy would be considered cancelled on that date. The Summervilles deny they received this notice from Northshore.
Stan Summerville purportedly wrote a check on July 3, 1988 and mailed it July 5, 1988 for the premium payment due on June 20, 1988. On July 20, 1988, this check was returned to Summerville with another letter informing him that the policy had been cancelled. The Summervilles acknowledged receipt of this letter and the unnego-tiated checks for the May and June premium payments.
However, on the evening of July 4, 1988, Stan Summerville and the plaintiff, Lori F. Summerville, were travelling in their vehicle when they were involved in an accident. Mr. Summerville lost control of the vehicle and it left the roadway. The vehicle overturned and struck a tree. Mrs. Summerville told an officer investigating the accident that prior to the accident she saw a light out of the corner of her eye and thought that another car forced them off the road.
*717 Mrs. Summerville was thrown from the vehicle and sustained fractures of several vertebrae. She underwent several surgical procedures on her back to correct her serious injuries. This accident occurred only a few days after Mrs. Summerville had given birth to a child.
Mr. Summerville was found to be intoxicated at the time of the accident and was convicted of driving while intoxicated.
Mrs. Summerville sought recovery against her husband’s automobile insurance company, Sovereign, for her damages arising from the accident. It was not disputed that Mrs. Summerville’s medical expenses were well in excess of the $10,000 policy limits. Sovereign refused to pay the claim on the grounds that the insurance policy had been cancelled on June 13, 1988.
Mrs. Summerville filed suit against Sovereign on June 22, 1989, claiming the Sovereign policy was in full force and effect at the time of the accident on July 4, 1988. The premium finance company was never joined as a party to this suit.
Sovereign filed a motion for summary judgment. Sovereign contended that Mr. Summerville had defaulted on his payment for his insurance premium, proper notice had been given by the premium finance company, the finance company had power of attorney to cancel the policy and the policy had, in fact, been cancelled prior to the date of the accident. Sovereign contended that the premium finance company, as required by law, mailed notice to Mr. Summerville on June 3, 1988, informing him that if the default was not cured by June 13, 1988, the policy would be cancelled as of that date.
In opposition to the motion for summary judgment, Mr. Summerville contended that he was never notified of the cancellation of the insurance policy and therefore the policy was in effect at the time of the accident.
The motion for summary judgment was denied by the trial court on April 16, 1990. Sovereign applied for writs to this court. This court denied Sovereign’s writ application on May 3, 1989, finding that, on the showing made, the exercise of this court’s supervisory jurisdiction was not warranted at that time, but that the applicant could seek review of the issue on appeal.
Trial on the merits was held on May 8, 1990. After considering all of the testimony and evidence, the trial court ruled in favor of the plaintiff. In reasons for judgment, the court found that the Summer-villes did not receive notice of cancellation as prescribed by LSA-R.S. 9:3550. The court reasoned that in order to satisfy the statutory requirement of mailing such notice of cancellation, not only should the notice be deposited in the mail, but it also must be received by the insured. The court accepted the Summervilles’ testimony that they never received notice of cancellation. The court also found that the form of the notice which Northshore purportedly mailed to the Summervilles was not in fact a notice of cancellation, but was merely a notice of intent to cancel and that even if the Summervilles had received such notice, it would not be sufficient to satisfy the cancellation requirements of LSA-R.S. 9:3550.
Sovereign has appealed the trial court decision.
NOTICE OF CANCELLATION
The trial court found that the insurance policy in this case was not properly cancelled. The court reasoned that in order to constitute mailing of notice of cancellation, not only must the notice be mailed, but it must also be received. This finding by the court was erroneous.
LSA-R.S. 9:3550(G) provides the proper procedure to be followed for cancellation of an insurance policy by a premium finance company in the event of nonpayment of the premiums by an insured:
G. Insurance contracts may be can-celled upon default as follows:
(1) When a premium finance agreement contains a power of attorney enabling the insurance premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be cancelled by the insurance premium finance company unless such *718 cancellation is effectuated in accordance with this Subsection.
(2) Upon default of insurance premium contract by the debtor, the premium finance company may mail a notice of cancellation to the insured, at his last known address as shown on the records of the insurance premium finance company. A copy of the notice of cancellation of the insurance contract shall also be mailed to the insurance agent negotiating the related insurance contract whose name and place of business appears on the premium finance agreement. Such notice of cancellation shall show the name of any governmental agency, mortgagee or third party also requiring notice of cancellation as shown on the insurance premium finance contract.
(3) Ten days after notice of cancellation has been mailed to the insured, if the default has not been cured, the insurance premium finance company may thereafter effect cancellation of such insurance contract or contracts by mailing to the insurer a copy of the notice of cancellation together with a statement certifying that:
(a) The premium finance agreement contains a valid power of attorney as provided in paragraph (1) above;
(b) The premium finance agreement is in default and the default has not been timely cured;
(c) Upon default, a notice of cancellation was mailed to the insured as provided in paragraph (2) above, specifying the date of mailing by the premium finance company to the insured; and
(d) Copies of the notice of cancellation were mailed to all persons shown by the premium finance agreement to have an interest in any loss which may occur thereunder, specifying the names and addresses of any governmental agencies, mortgagees or third parties to whom the insurance premium finance company has sent notice of cancellation.
Upon receipt of such notice of cancellation and statement from the premium finance company, the insurer shall be entitled to consider that cancellation of the insurance contract or contracts has been requested by the insured but without requiring the return of the insurance contract or contracts and the insurer may proceed to cancel such contract or contracts as provided in LSA-R.S. 22:637. The effective date of cancellation shall be as of 12:01 A.M. on the tenth day after the date of mailing of the notice of cancellation as shown in said statement furnished to the insurer by the premium finance company.
The receipt of such notice and statement by the insurer shall create a conclusive presumption that the facts stated in said notice and statement are correct, that the insurer is entitled to rely on such facts and that the cancellation of the insurance contract or contracts is concurred in and authorized by the insured. No liability of any nature whatsoever either in favor of the insured, any governmental agency, mortgagee or third party shall be imposed upon the insurer as a result of any misstatement of fact contained in said notice of cancellation or statement furnished by the insurance premium finance company to the insurer, or as result of failure by the insured, any governmental agency, mortgagee or third party to receive the notice of cancellation required by paragraph (2) above, or as a result of failure of the insurance premium finance company to comply with any of the requirements of this Subsection. Upon mailing of any unearned premium to the insurance premium finance company as soon as practicable following such cancellation, the insurer shall be fully discharged from all liability under the insurance contract or contracts for any loss occurring subsequent to the effective date of cancellation.
(4)Upon receipt of the notice of cancellation, the insurer shall give notice to any other governmental agency, mortgagee, or other third party as shown in the records of the insurer requiring statutory, regulation or contractual notice and which were not given by the premi *719 um finance company as provided in (3) above. The insurer shall give the prescribed notice on behalf of itself or the insured to any governmental agency, mortgagee, or third party on or before the fifth business day after the day it receives a copy of the notice of cancellation from the insurance premium finance company and shall determine the effective date of cancellation taking into consideration the number of days notice required to complete the cancellation if such notice is given by the insurer, otherwise the effective date of cancellation shall be calculated from the date the premium finance company mailed the notice to such governmental agency, mortgagee or other third party taking into consideration the number of days notice required to complete the cancellation.
For a premium finance company to effectively cancel an insurance policy on default of payment, the premium finance company must proceed in accordance with the procedures outlined in the above quoted statute. The statute requires that the following conditions must be met: (1) the debtor/insured has defaulted on the premium finance contract; (2) there is a power of attorney clause in the debtor’s contract with the premium finance company authorizing the company to cancel the policy; (3) the premium finance company has mailed a notice of cancellation to the insured and to the insured’s insurance agent; (4) either the premium finance company or the insurer has notified any mortgagee, governmental agency, or other interested third party indicated by the policy; (5) after a ten day delay in which the debtor has not made a payment, the premium finance company sent a copy of the notice of cancellation to the insurer with a statement certifying compliance with LSA-R.S. 9:3550(G)(3); (6) the insurer has refunded any unearned premiums to the premium finance company within 60 days. Cummings v. Wafer, 499 So.2d 184 (La.App. 2d Cir.1986); Hodges v. Colonial Lloyd’s Insurance, 546 So.2d 898 (La.App. 1st Cir.1989).
In this case, it is not disputed that the insured was in default in the payment of premiums. The facts show that Stan Sum-merville never timely remitted reimbursement for the insurance premiums to North-shore. Only the first payment, which was late, was accepted by Northshore. Subsequent payments, which were not accepted, were approximately one month overdue. Also, the premium financing agreement between Mr. Summerville and Northshore contains a power of attorney clause granting Northshore the right to cancel the insurance policy for nonpayment of the premiums. Further, it is not contended that there was any mortgagee, governmental agency or interested third party entitled to notice in this case. Nor is it disputed that the insurer was given proper notice and certification in order to cancel the policy. In addition, it is undisputed that unearned premiums were returned to the premium finance company.
The only dispute concerning the fulfillment of these conditions is whether North-shore mailed the notice of cancellation to the insured. All other conditions were clearly met.

Mailing of Notice of Cancellation

Employees of Northshore testified that a notice was sent to Mr. Summerville on June 3, 1988, notifying him that he was in default and informing him that if payment was not made by June 13, 1988, the insurance policy would be cancelled on that date. A copy of the notice purportedly sent to Mr. Summerville was filed into evidence by the insurance company.
Pat Poissenot, manager for Northshore Financial Services, testified that, pursuant to the premium finance agreement between the company and Stan Summerville, the company had power of attorney to cancel the insurance policy if Mr. Summerville failed to reimburse the company for the insurance premium. Ms. Poissenot testified that Mr. Summerville was late with all three checks sent to the company and that Northshore made the decision to cancel the policy. She testified that in cancelling the policy, a notice of cancellation was sent to the insured, the insurance agent, and any lien holder. If payment was not made, the *720 insurance company would be directed to cancel the policy.
Ms. Lois Erlicher, a clerk at Northshore Financial Services, testified regarding the standard procedure followed by the company for notifying clients of cancellation of insurance. Additionally, she specifically testified that a notice of cancellation dated June 3, 1988, was sent to Mr. Summerville after he failed to make the payment due on May 20, 1988. Ms. Erlicher testified that she posted the letter addressed to Mr. Sum-merville at the address shown on the policy. Mr. Summerville was informed that he had 10 days to cure the default on his account. The company’s records showed that timely payment was not made. Accordingly, Ms. Erlicher gave notice of cancellation to Sovereign Fire and Casualty. Ms. Erlicher also stated that checks received after cancellation of the policy were returned to Mr. Summerville with letters explaining that the policy had been can-celled.
Mr. and Mrs. Summerville both testified that they never received such notification. Stan Summerville testified at trial that he was consistently late in making the insurance premium payment but he denied receiving the notice of cancellation of the insurance policy prior to the accident.
Mrs. Summerville testified that they did not receive a notice of cancellation from Northshore before the accident. She also testified that the company returned their two premium checks, but only after the accident had occurred, accompanied by letters informing them that the insurance policy had been cancelled. Mrs. Summerville testified that she called Advanced Insurance Planning from the intensive care unit of the hospital several days after the accident, in order to report the accident, and was then told by Advanced that the insurance policy had been cancelled.
In the present case, the testimony of Ms. Poissenot and Ms. Erlicher establishes that the notice of cancellation was properly prepared and was in fact mailed to Mr. Sum-merville. All requirements for mailing of notice of cancellation under LSA-R.S. 9:3550(G) were met. As will be explained infra, upon proper mailing of the notice of cancellation in accordance with the statute, actual receipt of the notice is not required to release the insurance company from liability.
Receipt of Notice — Release of Inability
The trial court held that not only must the notice of cancellation be mailed, it must also be received by the insured. In ruling that the notice must be received, the trial court applied the interpretation of “mailed” found under LSA-R.S. 22:636.1 which provides for nonrenewal and cancellation of an auto insurance policy by an insurer. In ruling that receipt of notice by the insured was necessary, the court failed to give full effect to LSA-R.S. 9:3550(G)(3). This statute provides in pertinent part:
No liability of any nature whatsoever either in favor of the insured, any governmental agency, mortgagee or third party shall be imposed upon the insurer as a result of any misstatement of fact contained in said notice of cancellation or statement furnished by the insurance premium finance company to the insurer, or as a result of failure by the insured, any governmental agency, mortgagee, or third party to receive the notice of cancellation required by paragraph (2) above, or as a result of failure of the insurance premium finance company to comply with any of the requirements of this Subsection. (Emphasis supplied)
As stated above, Sovereign has shown that Northshore mailed a notice of cancellation to the insured and that Northshore certified to Sovereign that it fully complied with the statutory provisions of LSA-R.S. 9:3550. Therefore, under the precise wording of the statute, whether the insured in fact received notice of cancellation has no effect on the insurer’s right to cancel the policy. LSA-R.S. 9:3550 specifically relieves the insurance company from liability under these circumstances.
However, the argument has been raised that under Eaglin v. Champion Insurance Company, 558 So.2d 284 (La.App. 3d Cir.1990), this statutory protection granted to an insurance company is not to be given *721 effect and the policy is not cancelled when the insured fails to receive notice of cancellation. Eaglin is distinguishable from the present case. The court in Eaglin did not discuss that portion of LSA-R.S. 9:3550 cited above, which relieves the insurance company of liability if the prescribed procedures are followed, regardless of receipt of notice by the insured.
Also, in Eaglin, there was no showing that the premium finance company actually mailed a notice of cancellation to the insured. The court reasoned that because the requirements of LSA-R.S. 9:3550 are mandatory, any defect in the cancellation process results in ineffective cancellation of the policy and without an effective cancellation, the insurance company cannot be relieved of liability.
In the present case, it was established that the premium finance company did mail notice of cancellation to the insured. The present case fits precisely under the statutory protection afforded the insurer in that actual receipt of the notice by the insured is not required in order to relieve the insurer from liability.[1] In the absence of any allegation of fraud or illegality, the statute relieved Sovereign of liability to the insured in this ease.

Sufficiency of Notice

The trial court also stated in its reasons for judgment that even if the insured had received the notice, this notice was merely a notice of intent to cancel and not a notice of cancellation. The defendant claims the trial court erred in this finding.
The trial court cited Dairyland Insurance Company v. Marks, 468 So.2d 841 (La.App. 1st Cir.1985) for the proposition that the notice sent by Northshore did not satisfy the statutory requirements for cancellation set forth in LSA-R.S. 9:3550. In Dairyland, supra, the court noted that prior to the enactment of LSA-R.S. 9:3550, the requirements which were necessary for a premium finance company to cancel a policy were governed by LSA-R.S. 22:636.1, the latter statute governing, the procedure for cancellation by an insurer. The court noted that a notice of intent to cancel is not the same as a notice of cancellation. The notice sent in Dairyland, supra, informed the insured that the insurance policy was subject to cancellation if payment was not made within 10 days. Applying the prior law and jurisprudence, the court found that the notice sent in the Dairyland case was equivocal, showing only an intent to cancel and was not a sufficient notice of cancellation.
In other cases, however, where clear notices of cancellation were sent, the insurance policies were found to be properly cancelled. These cases have dealt with the procedures for notification of cancellation by a premium finance company under LSA-R.S. 9:3550, and have analyzed unequivocal notices, such as the one given in this case, which specify that insurance will be cancelled as of a certain date and time if premium payments are not made. See, for example, General Motors Acceptance Corporation v. Gill, 525 So.2d 1108 (La.App. 5th Cir.1988), writ denied 531 So.2d 476 (La.1988) and Hodges v. Colonial Lloyd’s Insurance, supra, as well as Cummings v. Wafer, supra.
In the present case, the notice of cancellation given to the insured by Northshore unequivocally states that if the default is not cured within 10 days, the insurance policy will be cancelled. The notice clearly sets forth that if the insured failed to cure the default the policy would be cancelled on June 13, 1988. Such notice is unequivocal *722 and therefore is different from the notice given in Dairy land, supra. We find that the trial court was incorrect in applying the rationale of the Dairyland decision to the facts of this case. We find that the notice sent by Northshore was sufficient to constitute notice of cancellation.
CONCLUSION
For the reasons stated above, we reverse the trial court judgment in favor of the plaintiff, Lori F. Summerville. Judgment is hereby rendered in favor of the defendant, Sovereign Fire and Casualty Insurance Company, rejecting the demands of the plaintiff, Lori F. Summerville, at her cost.
REVERSED.

. Even if receipt of notice of cancellation is required, this court has held that under LSA-R.S. 22:636.1, once a notice of cancellation has been mailed a rebuttable presumption exists that the notice was received. This presumption can be overcome only by affirmative evidence of nondelivery. Snow v. Mid-American Indemnity Company, 557 So.2d 1073 (La.App. 2d Cir.1990). In the instant case, the plaintiff failed to produce sufficient affirmative evidence of nondelivery to rebut the presumption of delivery. Cf. Broadway v. All-Star Insurance Corporation, 285 So.2d 536 (La.1973); Hemperly v. Aetna Casualty & Surety Company, 516 So.2d 1202 (La.App. 2d Cir.1987); Norred v. Employers Fire Insurance Company, 460 So.2d 1147 (La.App. 2d Cir.1984), writ denied 462 So.2d 1265 (La.1985); Aultman v. Rinicker, 416 So.2d 641 (La.App. 2d Cir.1983).