GOTHARD, Judge.
This suspensive appeal was filed by the defendant insurance company from a default judgment, following the court’s denial of a new trial.
On July 12, 1991 Catherine Hunter’s automobile was severely damaged when a car driven by Zolton A. Johnson struck it in the rear. Johnson’s vehicle was not insured. Automotive Casualty Insurance Company, which had issued a six month policy on Ms. Hunter’s car effective April 4, 1991, denied coverage, stating that the policy had been canceled for non-payment of premiums, effective May 26, 1991.
Ms. Hunter had signed a premium finance agreement through Automotive Financial Services, a premium finance company for Automotive Casualty’s policyholders. She made a down payment of $141.00. The balance of $245.00 was to be paid in four equal installments of $68.60, the first installment due on May 5, 1991. On May 15, Automotive Financial Services mailed a “Notice of Cancellation” to Ms. Hunter at her last known address, showing the amount of $72.03, including late charges, was due and stating:
NOTICE OF CANCELLATION
You are hereby notified that those policies listed in the schedule of policies will be cancelled for non-payment of financed premium. Any questions or inquiries concerning this notice should be directed toward Automotive Financial Services or the agent listed below. If total due Automotive Financial is received on or before the effective date shown below the insurance policy may be reinstated.
Ms. Hunter notified the insurance company of the accident on July 16. She denied having received the May 15 notice but received a letter on July 17, 1991 in which Automotive Financial Services stated that her policy had been canceled effective May 26, 1991. She filed suit on September 25, 1991 against Johnson and Automotive Casualty and obtained a judgment of default against the insurer on October 18, which was confirmed by judgment signed on November 7, 1991. The defendant’s motion for new trial was heard on December 6 and *573 judgment denying the new trial was signed on December 16, 1991.
In this appeal, the insurer asks the court to consider whether the court erred in granting the default judgment and whether it erred in denying the motion for new trial.
In reviewing a default judgment, the appellate court must determine the sufficiency of the evidence offered in support of the default judgment. Ordinarily, there is a presumption that the judgment was rendered on sufficient evidence and is correct; however, where the record contains a note of evidence introduced or a transcript of trial court proceedings, the presumption does not exist. Perkins v. Fontenot, 548 So.2d 369 (La.App. 3rd Cir.1989). Here there is a transcript of the default hearing.
The judgment includes the court’s reasons for judgment, which we summarize as follows; that Ms. Hunter testified that she had received no notice of cancellation; that the purported notice of cancellation submitted by the defendants (and introduced into evidence by plaintiff) was “not a notice of cancellation, but rather a note of a potential or possible cancellation if any additional installment payment is not received;” and that the additional payment in fact was made and received by the insurer’s agent. We must determine whether the evidence was sufficient for a prima facie case.
LSA-R.S. 9:3550 governs contracts with insurance premium finance companies, and applies to the case before us. Section G sets out the rules for canceling insurance policies on default when the finance agreement contains a power of attorney enabling the finance company to cancel a policy listed in the agreement.[1] *574 For a cancellation to be effective, the finance company is required to comply fully with the statute. Eaglin v. Champion Ins. Co., 558 So.2d 284 (La.App. 3rd Cir. 1990); Summerville v. Sovereign Fire and Cas., 587 So.2d 715 (La.App. 2d Cir.1991). The requirements are summarized succinctly in Summerville at 721:
... The statute requires that the following conditions must be met: (1) the debt- or/insured has defaulted on a premium finance contract; (2) there is a power of attorney clause in the debtor’s contract with the premium finance company authorizing the company to cancel the policy; (3) the premium finance company has mailed a notice of cancellation to the insured and to the insured’s insurance agent; (4) either the premium finance company or the insurer has notified any mortgagee, governmental agency, or other interested third party indicated by the policy; (5) after a ten day delay in which the debtor has not made a payment, the premium finance company sent a copy of the notice of cancellation to the insurer with a statement certifying compliance with LSA-R.S. 9:3550(G)(3); (6) the insurer has refunded any unearned premiums to the premium finance company within 60 days. Cummings v. Wafer 499 So.2d 184 (La.App. 2d Cir.1986); Hodges v. Colonial Lloyd’s Insurance, 546 So.2d 898 (La.App. 1st Cir.1989).
If notice of cancellation was properly prepared and mailed to the insured, actual receipt of the notice is not required. Summerville, supra, at 720.
The notice of cancellation states the policy “will be cancelled for non-payment of financed premium.” Similar wording was approved by the courts in Rachuba v. Hickerson, 503 So.2d 570, 571 (La.App. 4th Cir.1987) and Hodges v. Colonial Lloyd’s Ins., 546 So.2d 898, 903 (La.App. 1st Cir.1989); to the contrary, the notice in Dairyland Ins. Co. v. Marks, 468 So.2d 841, 843 (La.App. 1st Cir.1985), which read, “... insurance is subject to cancellation if payment is not received within 10 days of this notice,” was held to be merely notice of an intent to cancel.
Accordingly, we find that the notice of cancellation mailed by Automotive Financial Services was in compliance with LSA-R.S. 9:3550, as Ms. Hunter admitted that the address was correct.
The plaintiff argues that the finance company failed to comply with the statute by mailing to the insurer the statement required by R.S. 9:3550(G)(3), certifying that the premium was in default, the default had been cured, and that the procedures specified in the statute had been met. A certificate that clearly meets the statutory requirements, dated May 29, 1991, appears on the reverse side of the cancellation notice; therefore, the plaintiff’s argument is without merit.
A more perplexing problem is a payment by check for $47.06 and a money order for $100.00, both dated May 27, 1991 and a payment of $137.20 by check dated July 11, 1991. Ms. Hunter testified that she mailed the May 27 payment but delivered the July 11 check to the finance com- *575 pany office on the day before the accident and was given a copy of the insurance “renewal” at that time. Then on July 17 she received a letter informing her of the cancellation and returning the payments. We note that the letter from the finance company, introduced into evidence, referred to returning only the July 11 check. The plaintiff did not assert that the items had been negotiated. It is possible that the payments, though late, were accepted and should have been credited to the account, so that the insurance was actually in force, although the documents submitted suggest otherwise. This finding of fact can only be made in a full trial.
Accordingly, for the reasons assigned above, we vacate the default judgment below and grant a new trial to the defendant appellant.
JUDGMENT VACATED, CASE REMANDED FOR NEW TRIAL.

. R.S. 9:3550
G. Insurance contracts may be cancelled upon default as follows:
(1) When a premium finance agreement contains a power of attorney enabling the insurance premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be cancelled by the insurance premium finance company unless such cancellation is effectuated in accordance with this Subsection.
(2) Upon default of insurance premium contract by the debtor, the premium finance company may mail a notice of cancellation to the insured, at his last known address as shown on the records of the insurance premium finance company. A copy of the notice of cancellation of the insurance contract shall also be mailed to the insurance agent negotiating the related insurance contract whose name and place of business appears on the premium finance agreement. Such notice of cancellation shall show the name of any governmental agency, mortgagee or third party also requiring notice of cancellation as shown on the insurance premium finance contract.
(3) Ten days after notice of cancellation has been mailed to the insured, if the default has not been cured, the insurance premium finance company may thereafter effect cancellation of such insurance contract or contracts by mailing to the insurer a copy of the notice of cancellation together with a statement certifying that:
(a) The premium finance agreement contains a valid power of attorney as provided in paragraph (1) above;
(b) The premium finance agreement is in default and the default has not been timely cured;
(c) Upon default, a notice of cancellation was mailed to the insured as provided in paragraph (2) above, specifying the date of mailing by the premium finance company to the insured; and
(d)Copies of the notice of cancellation were mailed to all persons shown by the premium finance agreement to have an interest in any loss which may occur thereunder, specifying the names and addresses of any governmental agencies, mortgagees or third parties to whom the insurance premium finance company has sent notice of cancellation.
Upon receipt of such notice of cancellation and statement from the premium finance company, the insurer shall be entitled to consider that cancellation of the insurance contract or contracts has been requested by the insured but without requiring the return of the insurance contract or contracts and the insurer may proceed to cancel such contract or contracts as provided in R.S. 22:637. The effective date of cancellation shall be as of 12:01 A.M. on the tenth day after the date of mailing of the notice of cancellation as shown in said statement furnished to the insurer by the premium finance company.
The receipt of such notice and statement by the insurer shall create a conclusive presumption that the facts stated in said notice and statement are correct, that the insurer is entitled to rely on such facts and that the cancellation of the insurance contract or contracts is concurred in and authorized by the insured. No liability of any nature whatsoever either in favor of the insured, any governmental agency, mortgagee or third party shall be imposed upon the insurer as a result of any misstatement of fact contained in said notice of cancellation or statement furnished by the insurance premium finance company to the insurer, or as result of failure by the insured, any governmental agency, mortgagee or third party to receive the no *574 tice of cancellation required by paragraph (2) above, or as a result of failure of the insurance premium finance company to comply with any of the requirements of this Subsection. Upon mailing of any unearned premium to the insurance premium finance company as soon as practicable following such cancellation, the insurer shall be fully discharged from all liability under the insurance contract or contracts for any loss occurring subsequent to the effective date of cancellation.
(4) Upon receipt of the notice of cancellation, the insurer shall give notice to any other governmental agency, mortgagee, or other third party as shown in the records of the insurer requiring statutory, regulation or contractual notice and which were not given by the premium finance company as provided in (3) above. The insurer shall give the prescribed notice on behalf of itself or the insured to any governmental agency, mortgagee, or third party on or before the fifth business day after the day it receives a copy of the notice of cancellation from the insurance premium finance company and shall determine the effective date of cancellation taking into consideration the number of days notice required to complete the cancellation if such notice is given by the insurer, otherwise the effective date of cancellation shall be calculated from the date the premium finance company mailed the notice to such governmental agency, mortgagee, or other third party taking into consideration the number of days notice required to complete the cancellation.