546 So.2d 898 (1989)
Terry L. HODGES and Debbie S. Hodges
v.
COLONIAL LLOYD'S INSURANCE.
No. 88 CA 0929.
Court of Appeal of Louisiana, First Circuit.
June 20, 1989.
William C. Shockey, Baton Rouge, for Terry L. & Debbie S. Hodges.
Richard A. Deas, Janelle Naccari, Metairie, for Colonial Lloyd's Ins.
Bruce Danner, Philip Brooks, Metairie, for Ins. Premium Assistance Co. (IPAC).
Before CARTER, LANIER and LEBLANC, JJ.
CARTER, Judge.
This is a suit for damages and declaratory judgment arising out of an automobile insurance policy.

FACTS
On November 8, 1984, Colonial Lloyd's Insurance Company (Colonial) issued to plaintiffs, Terry L. Hodges and Debbie S. Hodges, a policy of automobile insurance for a period of one year.[1] The premium for *899 the insurance policy was financed through Insurance Premium Assistance Company (IPAC). Under the terms of the premium finance agreement between IPAC and plaintiffs, plaintiffs were responsible for monthly payments on or about the eighth day of each month, commencing in December of 1984. Additionally, plaintiffs appointed IPAC as its attorney in fact with power to cancel the insurance coverage in the event of plaintiffs' default in timely payment of the premium installments.[2]
Plaintiffs defaulted in the payment due on February 8, 1985.[3] As a result of this default, on February 13, 1985, IPAC mailed to plaintiffs a notice entitled "Cancellation Notice." The cancellation notice, which was introduced into evidence as exhibit P-2, provided in pertinent part, as follows:
 * ******************* *
 * CANCELLATION NOTICE *
 * ******************* *
HODGES, TERRY
APT 451
10530 FLORIDA BLVD
BATON ROUGE LA 70815
IMPORTANT, YOU ARE HEREBY NOTIFIED THAT THE BELOW MENTIONED
INSURANCE POLICY WILL BE CANCELLED IF PAYMENT IS NOT RECEIVED
BY THE DATE INDICATED IN NO. 3 BELOW. YOUR POLICY WILL BE CANCELLED
BECAUSE YOU HAVE DEFAULTED IN THE PAYMENT OF AN INSTALLMENT
DUE UNDER YOUR PREMIUM FINANCE AGREEMENT.
1) POLICY NUMBER: PA103632
2) IPAC ACCOUNT NUMBER: 41762
3) DATE POLICY TO BE CANCELLED: 02/26/85 ** IMPORTANT: CANCELLATION
 DATE
4) DATE THIS NOTICE MAILED: 02/13/85
THIS INSURANCE IS SUBJECT TO CANCELLATION IF THE PAYMENT IS NOT
RECEIVED WITHIN TEN (10) DAYS OF THE DATE OF THIS NOTICE. THE
*900
FOLLOWING IS DUE WITHIN TEN DAYS IN ORDER TO PREVENT CANCELLATION.
5) DUE DATE: 02/8/85
6) PAYMENT AMOUNT: 96.90
7) LATE CHARGE: 4.85 (ASSESSED 10 DAYS AFTER DUE DATE)
8) TOTAL DUE: 101.75
A copy of this notice was sent to AAA InsuranceBaton Rouge, a franchise of AAA Insurance Company.
Plaintiffs received the February 13, 1985, notice and were aware that if the premium was not paid by February 26, 1985, their insurance would be cancelled and they would be uninsured. Thereafter, IPAC, pursuant to the power of attorney contained in the premium finance agreement, requested that Colonial cancel the plaintiffs' insurance policy, effective February 26, 1985. Plaintiffs admitted receiving the second notice of termination also. Additionally, plaintiffs did not pay any premiums after January, 1985, and did not attempt to reinstate the policy after receipt of the February, 1985, notices.
On or about July 1, 1985, Colonial effectuated cancellation of plaintiffs' insurance policy for nonpayment to IPAC, effective February 26, 1985. At that time, reimbursement of all unearned premiums was made to IPAC, and Fidelity National Bank, the lienholder of the 1984 Subaru, was notified of the cancellation. Plaintiffs also received a copy of the July 1, 1985, notice.
On August 13, 1985, plaintiffs were involved in a multi-car collision. As a result of the accident, the 1984 Subaru sustained damages of approximately $6,400.00 and was rendered a total loss. Plaintiffs made claims upon Colonial under the collision coverage afforded by the policy of insurance issued by Colonial and financed by IPAC. Colonial denied coverage on the grounds that the policy had been cancelled for nonpayment of the premiums.
On October 17, 1986, plaintiffs filed suit against Colonial for coverage under the collision provisions of the policy for $6,075.00 in damages allegedly sustained to their 1984 Subaru.[4] Plaintiffs also requested declaratory relief, declaring that the Colonial policy was in full force and effect on August 13, 1985, and that Colonial owes plaintiffs protection under the liability portions of the policy, including defense, against claims advanced against them by others involved in the August 13, 1985, collision.[5] Plaintiffs also sought penalties and attorney's fees. On March 6, 1987, Colonial filed a third party demand against IPAC requesting indemnification from IPAC on the main demand if Colonial was held liable to plaintiffs or, alternatively, for repayment of the unearned premiums paid to IPAC.
After trial on the merits, the trial court rendered judgment in favor of plaintiffs and against Colonial on the main demand for $6,150.00, together with legal interest from date of judicial demand until paid, but denied plaintiffs' request for penalties and attorney's fees.[6] The trial court also issued a declaratory judgment, declaring that the automobile policy issued by Colonial to plaintiffs was in full force and effect on August 13, 1985, and that Colonial owes plaintiffs the protection of the liability portion of the policy, including defense. The trial court also rendered judgment on the third party demand in favor of Colonial and against IPAC for $6,150.00, reserving unto Colonial the right to seek indemnification for future expenditures on the liability portion of the policy.
*901 From this adverse judgment, IPAC appeals assigning the following errors:
(1) The City Court was incorrect in determining that the subject "Cancellation Notice" (P-2) did not constitute a notice of cancellation as required by LSA-R.S. 9:3550 (as amended).
(2) The City Court was incorrect in determining that Colonial Lloyd's Insurance Company was entitled to indemnification from Appellant relative to the Judgment rendered in favor of Plaintiffs; and
(3) The City Court was incorrect in determining that Appellee was entitled to indemnification from Appellant on the basis of the subject Cancellation Notice.
Colonial did not appeal or answer the appeal. Therefore, the only issue before this court is the propriety of the trial court judgment on Colonial's third party demand against IPAC.

ASSIGNMENT OF ERROR NO. 1

(Insurance Coverage)
The essential question in this case is whether there was an effective cancellation of the insurance contract upon default. LSA-R.S. 9:3550 sets forth the procedures an insurance premium finance company must follow to validly cancel an insurance policy. General Motors Acceptance Corporation v. Gill, 525 So.2d 1108 (La.App. 5th Cir.1988), writ denied, 531 So.2d 476 (La.1988); Britten v. Reavis, 503 So.2d 1149 (La.App. 3rd Cir.1987), writ denied, 506 So.2d 1232 (La.1987); Dairyland Insurance Company v. Marks, 468 So.2d 841 (La.App. 1st Cir.1985).
LSA-R.S. 9:3550 G provides that insurance contracts may be cancelled upon default as follows:
(1) When a premium finance agreement contains a power of attorney enabling the insurance premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be cancelled by the insurance premium finance company unless such cancellation is effectuated in accordance with this Subsection.
(2) Upon default of insurance premium contract by the debtor, the premium finance company may mail a notice of cancellation to the insured, at his last known address as shown on the records of the insurance premium finance company. A copy of the notice of cancellation of the insurance contract shall also be mailed to the insurance agent negotiating the related insurance contract whose name and place of business appears on the premium finance agreement. Such notice of cancellation shall show the name of any governmental agency, mortgagee or third party also requiring notice of cancellation as shown on the insurance premium finance contract.
(3) Ten days after notice of cancellation has been mailed to the insured, if the default has not been cured, the insurance premium finance company may thereafter effect cancellation of such insurance contract or contracts by mailing to the insurer a copy of the notice of cancellation together with a statement certifying that:
(a) The premium finance agreement contains a valid power of attorney as provided in paragraph (1) above;
(b) The premium finance agreement is in default and the default has not been timely cured;
(c) Upon default, a notice of cancellation was mailed to the insured as provided in paragraph (2) above, specifying the date of mailing by the premium finance company to the insured; and
(d) Copies of the notice of cancellation were mailed to all persons shown by the premium finance agreement to have an interest in any loss which may occur thereunder, specifying the names and addresses of any governmental agencies, mortgagees or third parties to whom the insurance premium finance company has sent notice of cancellation.
Upon receipt of such notice of cancellation and statement from the premium finance company, the insurer shall be entitled to consider that cancellation of *902 the insurance contract or contracts has been requested by the insured but without requiring the return of the insurance contract or contracts and the insurer may proceed to cancel such contract or contracts as provided in R.S. 22:637. The effective date of cancellation shall be as of 12:01 A.M. on the tenth day after the date of mailing of the notice of cancellation as shown in said statement furnished to the insurer by the premium finance company.
The receipt of such notice and statement by the insurer shall create a conclusive presumption that the facts stated in said notice and statement are correct, that the insurer is entitled to rely on such facts and that the cancellation of the insurance contract or contracts is concurred in and authorized by the insured. No liability of any nature whatsoever either in favor of the insured, any governmental agency, mortgagee or third party shall be imposed upon the insurer as a result of any misstatement of fact contained in said notice of cancellation or statement furnished by the insurance premium finance company to the insurer, or as result of failure by the insured, any governmental agency, mortgagee or third party to receive the notice of cancellation required by paragraph (2) above, or as a result of failure of the insurance premium finance company to comply with any of the requirements of this Subsection. Upon mailing of any unearned premium to the insurance premium finance company as soon as practicable following such cancellation, the insurer shall be fully discharged from all liability under the insurance contract or contracts for any loss occurring subsequent to the effective date of cancellation.
(4) Upon receipt of the notice of cancellation, the insurer shall give notice to any other governmental agency, mortgagee, or other third party as shown in the records of the insurer requiring statutory, regulation or contractual notice and which were not given by the premium finance company as provided in (3) above. The insurer shall give the prescribed notice on behalf of itself or the insured to any governmental agency, mortgagee, or third party on or before the fifth business day after the day it receives a copy of the notice of cancellation from the insurance premium finance company and shall determine the effective day of cancellation taking into consideration the number of days notice required to complete the cancellation if such notice is given by the insurer, otherwise the effective date of cancellation shall be calculated from the date the premium finance company mailed the notice to such governmental agency, mortgagee, or other third party taking into consideration the number of days notice required to complete the cancellation.
The conditions required by the statute are as follows: (1) the debtor/insured has defaulted on the premium finance contract; (2) there is a power of attorney clause in the debtor's contract with the premium finance company; (3) the premium finance company has mailed a notice of cancellation to the insured and to the insured's insurance agent; (4) either the premium finance company or the insurer has notified any mortgagee, governmental agency, or other interested third party indicated by the policy and, (5) after a ten day delay in which the debtor had not made a payment, the premium finance company sent a copy of the notice of cancellation to the insurer, with a statement certifying compliance with 9:3550 G(3). See Cummings v. Wafer, 499 So.2d 184 (La.App. 2nd Cir.1986). Strict adherence to the statutory procedure for exercising the power of attorney and effecting cancellation of a policy by a finance company is necessary because that is the only way the effective day of cancellation can be accurately determined. Britten v. Reavis, supra. This rather detailed and technical statutory method of effecting cancellation of a policy by a finance company serves two functions: (1) it provides a clear method of fixing the exact time and date of cancellation, and (2) it grants a minimum time during which the default may be cured. Britten v. Reavis, supra.
*903 In the instant case, it is undisputed that plaintiffs defaulted on the premium finance contract, which included a power of attorney clause. Additionally, it is undisputed that IPAC mailed notice of cancellation to plaintiffs and Colonial, both of whom received said notice. At trial, plaintiffs contested the sufficiency of this notice.
Although at trial Colonial argued that the IPAC notice of February 13, 1985, was sufficient to effect cancellation, on appeal, Colonial contends that such notice was ineffective. In support of this position, Colonial relies on Dairyland Insurance Company v. Marks, supra. The trial judge, in finding that the notice did not comply with LSA-R.S. 9:3550 G, stated, in pertinent part, as follows:
A notice which contains the provision that the policy will be cancelled as of a certain day absent payment of the premium is inadequate and does not satisfy the statutory requirement of R.S. 9:3550(G). The notice must contain words to the effect that the policy "is cancelled" as opposed to "will be cancelled" or is "subject to cancellation".
In Dairyland Insurance Company v. Marks, supra, the premium finance company sent the insureds notice, which it alleged made cancellation effective on December 15, 1981. The notice in Dairyland read as follows: "IMPORTANT: INSURANCE IS SUBJECT TO CANCELLATION IF PAYMENT IS NOT RECEIVED WITHIN 10 DAYS OF THIS NOTICE." The court in Dairyland upheld the trial court's determination that such notice was merely notice of an intent to cancel and not a notice of cancellation. Accordingly, the court found that the requirement of sending to the insurer a copy of the notice of cancellation sent to the insured had not been met.
In the instant case, as noted earlier, the notice of February 13, 1985, entitled "CANCELLATION NOTICE," provided as follows:
IMPORTANT, YOU ARE HEREBY NOTIFIED THAT THE BELOW MENTIONED
INSURANCE POLICY WILL BE CANCELLED IF PAYMENT IS NOT RECEIVED
BY THE DATE INDICATED IN NO. 3 BELOW. YOUR POLICY WILL BE CANCELLED
BECAUSE YOU HAVE DEFAULTED IN THE PAYMENT OF AN INSTALLMENT
DUE UNDER YOUR PREMIUM FINANCE AGREEMENT.
1) POLICY NUMBER: PA103632
2) IPAC ACCOUNT NUMBER: 41762
3) DATE POLICY TO BE CANCELLED: 02/26/85 ** IMPORTANT: CANCELLATION
 DATE
4) DATE THIS NOTICE MAILED: 02/13/85
(Emphasis added)
Clearly, the notice, dated February 13, 1985, revealed that plaintiffs' insurance coverage would be cancelled, effective February 26, 1985, unless the default on the payment was cured. Additionally, after the ten day delay, a second notice, dated February 26, 1985, again notified plaintiffs and Colonial that coverage was cancelled. The second notice provided, in pertinent part, as follows:
 *********** TERMINATION OF INSURANCE ***********
DUE TO YOUR DEFAULT UNDER THE TERMS OF THE I.P.A.C. CONTRACT,
YOUR INSURANCE POLICY HAS BEEN TERMINATED.
I.P.A.C. WILL RECEIVE ALL UNEARNED PREMIUMS AND COMMISSIONS
AND WILL CREDIT YOUR ACCOUNT. IF, AFTER ALL MONIES HAVE BEEN
APPLIED TO YOUR ACCOUNT A REFUND IS DUE, I.P.A.C. WILL REFUND THE
SURPLUS TO YOU.
HODGES, TERRY ACCOUNT NUMBER: 41762
APT 451 CANCEL DATE: 02/26/85
10530 FLORIDA BLVD AGENT: AAA INS-BATON ROUGE
*904
BATON ROUGE LA 70815 COMPANY: COLONIAL INS FACIL
IT IS IMPORTANT THAT YOU REINSTATE YOUR INSURANCE AS SOON AS
POSSIBLE.
Colonial's notice was accompanied by a statement certifying compliance with LSA-R.S. 9:3550 G. Thereafter, Colonial later notified Fidelity of the cancellation and refunded the unearned premiums to IPAC.
After carefully reviewing the entire record in this matter, we find that IPAC complied with the requirements set forth under the applicable statutory provisions to effect cancellation of plaintiffs' automobile insurance policy prior to plaintiffs' August 13, 1985, automobile accident. As such, we find that the trial court erred in finding that the policy afforded coverage to plaintiffs and that IPAC was liable to Colonial on the third party demand. Because of our finding that the notice of cancellation was effective and that plaintiffs' insurance coverage was properly terminated prior to the August 13, 1985 accident, we find it unnecessary to address the remaining assignments of error.

CONCLUSION
For the above reasons, the trial court judgment on the third party demand in favor of Colonial and against IPAC is reversed. Colonial is cast for all costs.
REVERSED.
NOTES
[1] The automobile insurance policy issued by Colonial insured a 1982 Buick and a 1984 Subaru with liability limits of $10,000.00 per person and $20,000.00 per occurrence on each vehicle. The policy also provided comprehensive and collision coverage on the 1984 Subaru, subject to a $250.00 deductible. The Hodges rejected all medical payment and uninsured motorist protection.
[2] The premium finance agreement, entitled "NEGOTIABLE PAPER/PREMIUM FINANCE AGREEMENT/POWER OF ATTORNEY," provided as follows with regard to the power of attorney:

POWER OF ATTORNEY.
The insured hereby irrevocably appoints IPAC as its attorney in fact with full authority to perform any and all acts affecting the rights and interests of Insured under the policies listed herein, said power to include, but not limited to, the power to (1) cancel any of the scheduled policies in the event of the insured's default in timely payment of installments hereunder, or for any other default listed below; (2) give notice to the insurance company of cancellation; (3) collect and receive from the insurance companies any and all funds due insured such as, but not limited to: (a) unearned premiums from cancellations; (b) dividends; (c) returns on endorsements; (d) loss payments; (e) return premiums remitted for any other reason; (4) execute and deliver on behalf of insured all documents, forms and notices, relating to the above scheduled policies (in furtherance of this agreement); (5) deliver to the insurance company the insured's original policy or lost policy release or cancellation of this financed policy; (6) sign or endorse any written instrument, including checks or drafts issued by the companies in payment of dividends, return premiums, unearned premiums, or loss premiums. The companies are authorized to recognize IPAC's claim to rights hereunder.
Insured herewith ratifies and confirms any and all acts that the attorney may perform hereunder and insured requests that the company send all unearned and/or returned premiums directly to IPAC. Any funds returned to IPAC for any of the above may be applied to any and all indebtedness insured may have with IPAC.
[3] At trial, evidence was presented showing that plaintiffs had previously been sent a notice of cancellation on December 13, 1984, giving plaintiffs until December 23, 1984, to cure their default. IPAC requested cancellation of the policy on December 27, 1984. However, in early January, 1985, plaintiffs requested and obtained reinstatement of the policy.
[4] Plaintiffs claim they sustained losses, covered under the collision provisions of the Colonial policy, of $6,325.00, subject to a $250.00 deductible.
[5] Plaintiffs had been served with two or three suits prior to trial of the instant case. According to Debbie S. Hodges, plaintiffs had received demands from Sam Taylor for personal injuries and lost wages he sustained in the August 13, 1985, collision.
[6] Plaintiffs have not appealed or answered the appeal. Whether interest runs on the main demand from due date or judicial demand is specifically not addressed; plaintiffs only prayed for interest from date of judicial demand.