633 So.2d 686 (1993)
Gilbert DELATTE and State Farm Mutual Automobile Insurance Company
v.
Keith LEMOTTE.
No. 93 CA 0754.
Court of Appeal of Louisiana, First Circuit.
December 29, 1993.
*687 Murphy J. Burke, Baton Rouge, for plaintiffs-appellees.
Rolfe H. McCollister, Baton Rouge, for defendant-appellant.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
LOTTINGER, Chief Judge.
This is a subrogation action instituted by State Farm Mutual Automobile Insurance Company (State Farm) and its insured, Gilbert Delatte. Plaintiffs seek recovery for property damages sustained by Mr. Delatte as a result of an automobile accident caused by defendant, Keith Lemotte. Both liability and damages have been stipulated by Louisiana Indemnity Company (LIC), purportedly Mr. Lemotte's insurer. However, LIC maintains that it properly canceled Mr. Lemotte's policy prior to the date of the accident. From judgment in favor of plaintiffs, defendant, LIC, appeals.

FACTS
At trial, Mr. Delatte, State Farm, and LIC presented joint stipulations stating:
4.
Prior to June 10, 1991, Keith Lemotte obtained automobile liability insurance coverage through a policy of insurance issued by Louisiana Indemnity Company, policy number 4L4064195, with effective dates of 04-23-91 through 04-23-92, with premiums financed through Premium Service Plan, Inc., under a premium finance agreement containing a valid Power of Attorney enabling Premium Service Plan, Inc., to cancel the insurance contract for non-payment of the amounts due under the agreement....
....
8.
Premium Service Plan, Inc., did not mail a copy of the Notice of Cancellation to Louisiana Indemnity Company, or a statement certifying that:
a. The premium finance agreement between Premium Service Plan, Inc., and Keith Lemotte contained a valid Power of Attorney;
b. The premium finance agreement was in default and the default had not been timely cured; and
c. Upon default a Notice of Cancellation was mailed to Keith Lemotte.
9.
Louisiana Indemnity Company and the insurance financing company, Premium Service Plan, Inc., although two formally separate and distinct companies, are owned by the same four stockholders, are located in the same building with the same mailing address, share a common telephone number, share the same personnel department, and share one central filing system and computer system.

*688 10.
The Notice of Cancellation mailed by Premium Service Plan, Inc., to Keith Lemotte on May 28, 1991, was entered into the central filing system and computer system shared by Premium Service Plan, Inc., and Louisiana Indemnity Company, and Louisiana Indemnity Company thereby had notice of Keith Lemotte's default under the premium finance agreement and Premium Service Plan, Inc.'s mailing of the Notice of Cancellation on May 28, 1991. The policy was therefore and thereby canceled effective June 7, 1991, for non-payment of financed premium.
11.
The premium finance agreement entered into between Premium Service Plan, Inc., and Keith Lemotte, containing a valid power of attorney and enabling Premium Service Plan, Inc., to cancel the insurance policy issued by Louisiana Indemnity Company for non-payment of finance premium was kept in the same central filing system and in the possession of Louisiana Indemnity Company from the date the premium finance agreement was entered into between Premium Service Plan, Inc., and Keith Lemotte to the present.
State Farm contends that the policy was not properly canceled because the insurance premium finance company, Premium Service Plan, Inc. (PSP), did not send to LIC a copy of the notice of cancellation or the certificate of compliance as required by La.R.S. 9:3550(G)(3).[1] LIC contends that because PSP and LIC share the same computers, address, personnel, and filing system, the mailing requirement was unnecessary.
The trial court held that the "mailing requirement of La.R.S. 9:3550(G)(3) is indeed sacramental [to] the cancellation procedure...." Accordingly, the court cast judgment in favor of the plaintiffs.

ASSIGNMENTS OF ERROR
Defendant, LIC, appeals, assigning two errors:

*689 (A) The Trial Court erred in holding that the provision of Louisiana R.S. 9:3550 G(3)(a) that after a ten day notice of cancellation has been mailed to the insured the premium finance company may effect cancellation of the policy by mailing to the insurer a copy of the notice of cancellation together with a certification statement is sacramental to the effective cancellation of the policy.
(B) The Trial Court erred in holding the insurer, Louisiana Indemnity Company, liable for the judgment cast against Keith Lemotte.

CANCELLATION OF THE POLICY UNDER LA.R.S. 9:3550
The main issue in this case is whether there was an effective cancellation of the policy issued to Mr. Lemotte. La.R.S. 9:3550(G) mandates the procedure by which a premium finance company may cancel a policy upon the default of the insured. We summarized the statutory requirements in Hodges v. Colonial Lloyd's Insurance, 546 So.2d 898, 902 (La.App. 1st Cir.1989), as follows:
(1) the debtor/insured has defaulted on the premium finance contract; (2) there is a power of attorney clause in the debtor's contract with the premium finance company; (3) the premium finance company has mailed a notice of cancellation to the insured and to the insured's insurance agent; (4) either the premium finance company or the insurer has notified any mortgagee, governmental agency, or other interested third party indicated by the policy, and (5) after a ten day delay in which the debtor had not made a payment, the premium finance company sent a copy of the notice of cancellation to the insurer, with a statement certifying compliance with 9:3550 G(3).
Louisiana courts require strict adherence to these statutory requirements when a finance company exercises its power of attorney to cancel an insurance policy. See Hodges, 546 So.2d at 902; Britten v. Reavis, 503 So.2d 1149, 1153 (La.App. 3rd Cir.), writ denied, 506 So.2d 1232 (La.1987).
The parties in the present case stipulated that PSP did not mail to LIC a copy of the notice of cancellation or a certificate of compliance. Clearly, PSP did not comply with the fifth Hodges requirement. LIC argues, however, that an exception to the mailing requirement is appropriate in this case because the notice of cancellation and all information relating to the premium finance agreement were recorded in the central filing and computer systems shared by LIC and PSP.
The mailing requirement from which LIC seeks an exception is a critical step in the cancellation process. In Britten, the court stated that:
Merely sending the notice of cancellation to the insured and insurer does not effectively cancel the policy. Only after the insured has been given a minimum of ten days to cure the default, and does not, may the finance company thereafter effect cancellation through its power of attorney.
The insurer is entitled to consider that cancellation has been requested by the insured only upon receipt of both the notice of cancellation and "the statement from the premium finance company." Subsection (G)(3). The sending of a copy of the notice of cancellation without the attached statement merely suggests that the premium finance company has sent the notice of cancellation to the insured but that it has not yet exercised its option to cancel the policy under its power of attorney. The finance company does not have to effect cancellation. It may elect to wait and allow its debtor to cure the default. The insurer has no interest in the matter because the insurer has been paid its premium in full.
Britten, 503 So.2d at 1153.
Although all information pertaining to the premium finance agreement and the notice of cancellation were "stored" in the same computer and filing systems, LIC could not conclude that PSP exercised its right to cancel the policy until PSP sent a statement certifying compliance with the statutory requirements for cancellation. Upon receipt of the notice of cancellation together with the statement of compliance, the insurance company *690 then knows that the premium finance company exercised its power of attorney. Until this requirement is met, the insurance company cannot effectively cancel an insurance policy. Therefore, the failure of LIC to produce in any form or fashion a statement from PSP certifying compliance with La.R.S. 9:3550 renders LIC's attempt to cancel the policy ineffective.

LIABILITY OF LOUISIANA INDEMNITY COMPANY
LIC asserts on appeal that if the policy was not effectively canceled, it is relieved of liability under La.R.S. 9:3350(G)(3).
LIC's reliance on this statute is misplaced. An insurer may only rely upon the above provision after it receives notice of cancellation and a statement of compliance from the premium finance company. After receiving the foregoing, the insurer can consider the facts contained therein as true and cancel the policy. If the insurer has not received a copy of the notice and the statement, it cannot cancel the policy. The immunity provided insurance companies in La.R.S. 9:3550(G)(3) is predicated upon receipt of the proper notification from the premium finance company.

CONCLUSION
For the reasons stated above, we affirm the trial court's judgment in favor of the plaintiffs and find that the defendant-appellant is not exempt from liability under La. R.S. 9:3550(G)(3). The defendant-appellant is cast for all costs.
AFFIRMED.
NOTES
[1] At the time of the accident, La.R.S. 9:3550(G)(3) provided:

G. Insurance contracts may be cancelled upon default as follows:
(3) Ten days after notice of cancellation has been mailed to the insured, if the default has not been cured, the insurance premium finance company may thereafter effect cancellation of such insurance contract or contracts by mailing to the insurer a copy of the notice of cancellation together with a statement certifying that:
(a) The premium finance agreement contains a valid power of attorney as provided in paragraph
(1) above;
(b) The premium finance agreement is in default and the default has not been timely cured;
(c) Upon default, a notice of cancellation was mailed to the insured as provided in paragraph
(2) above, specifying the date of mailing by the premium finance company to the insured; and
(d) Copies of the notice of cancellation were mailed to all persons shown by the premium finance agreement to have an interest in any loss which may occur thereunder, specifying the names and addresses of any governmental agencies, mortgagees or third parties to whom the insurance premium finance company has sent notice of cancellation.
Upon receipt of such notice of cancellation and statement from the premium finance company, the insurer shall be entitled to consider that cancellation of the insurance contract or contracts has been requested by the insured but without requiring the return of the insurance contract or contracts and the insurer may proceed to cancel such contract or contracts as provided in R.S. 22:637. The effective date of cancellation shall be as of 12:01 A.M. on the tenth day after the date of mailing of the notice of cancellation as shown in said statement furnished to the insurer by the premium finance company.
The receipt of such notice and statement by the insurer shall create a conclusive presumption that the facts stated in said notice and statement are correct, that the insurer is entitled to rely on such facts and that the cancellation of the insurance contract or contracts is concurred in and authorized by the insured. No liability of any nature whatsoever either in favor of the insured, any governmental agency, mortgagee or third party shall be imposed upon the insurer as a result of any misstatement of fact contained in said notice of cancellation or statement furnished by the insurance premium finance company to the insurer, or as result of failure by the insured, any governmental agency, mortgagee or third party to receive the notice of cancellation required by paragraph (2) above, or as a result of failure of the insurance premium finance company to comply with any of the requirements of this Subsection. Upon mailing of any unearned premium to the insurance premium finance company as soon as practicable following such cancellation, the insurer shall be fully discharged from all liability under the insurance contract or contracts for any loss occurring subsequent to the effective date of cancellation.