STEPHEN J. WINDHORST, Judge.
|aKMJ Services, Inc. (“KMJ”) appeals the granting of summary judgment in favor of Gulf Coast Marine, L.L.C. (“GCM”), finding that GCM had properly cancelled the insurance policies issued to KMJ. We affirm.
FACTS:
In early 2010, KMJ, through its president, Brad Blanchard, requested Ells-worth Corporation (“Ellsworth”), specifically through Tom Hood, KMJ’s agent, to procure insurance policies to cover its various marine vessels and operations. Ells-worth contacted Gulf Coast Marine, L.L.C., a wholesale broker, to place the necessary coverage since the request involved surplus lines/marine insurance, which cannot be provided through customary domestic insurance providers.
GCM, as a wholesale broker, had the authority to bind certain underwriters in the London Insurance Market (“pool insurers”). Also, its relationship with other foreign and domestic insurers (“non-pool insurers”) enabled GCM to supplement coverage that could not be fulfilled through the pool insurers. In May 2010, GCM, acting as agent on behalf of the insurers, obtained coverage with assigned percentage of risk through various underwriters and issued two policies of insur- *36 anee to KMJ. Policy Number GCM21662 provided KMJ with ^Comprehensive General Liability coverage and Policy Number GCM10581 provided Hull and Machinery, Excess of Loss, Increased Value, Protection and Indemnity, Pollution, Bumber-shoot and Excess Bumbershoot, which is commonly referred to as the “Marine Package Policy.” GCM received a Notice of Acceptance which identified Imperial Credit Corporation (“ICC”) as the premium finance company that would be making premium payments on the two policies, on behalf of KMJ.
The premium finance agreement signed by KMJ and ICC contained a valid and binding power of attorney.[1] The power of attorney conferred on ICC the ability to cancel the insurance policies listed in the Schedule of Financed Policies in the event that KMJ defaulted on payment of insurance premiums to ICC. ICC’s internal policy when handling multi-insurer policies was to only list the lead underwriters with the highest percentage of risk under each category.
KMJ failed to make the first scheduled payment under the premium finance agreement, and ICC sent notice of cancellation to the insured, KMJ, its agent (Ells-worth), agent of insurers (GCM), and the insurers listed on the Schedule of Financed Policies. As a result of the Notice of Cancellation, GCM cancelled the two policies it had issued to KMJ.
KMJ filed suit, alleging that GCM improperly cancelled policies that were not listed on the Schedule of Financed Policies. As a result, KMJ sustained damages for lost profits from the inability to perform clean-up work after the oil spill.[2] GCM filed a motion for summary judgment which was granted. This appeal followed.
LLAW AND ANALYSIS:
When reviewing a trial court’s grant of a motion for summary judgment, a de novo standard of review is applied. Flowers v. Wal-Mart Stores, Inc., 12-140 (La.App. 5 Cir. 7/31/12), 99 So.3d 696 (citation omitted). In summary judgment there is no live testimony or determination of credibility of evidence by the trial court. La. C.C.P. art. 966 B(2); Rapp v. City of New Orleans, 95-1638 (La.App. 4 Cir. 9/18/96), 681 So.2d 433, rehearing denied, writ denied, 96-2925 (La.1/24/97), 686 So.2d 868; Hutchinson v. Knights of Columbus, Council No. 5747, 03-1533 (La.2/20/04), 866 So.2d 228. Therefore, courts of appeal apply the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law.
Generally, in a motion for summary judgment, the mover retains the burden of proof. After adequate discovery, if the mover sustains this initial burden by showing an absence of factual support for at least one essential element of the adverse party’s claim, action, or defense, then the burden shifts to the adverse party to present factual support adequate to establish that he will be able to satisfy the evidentia-ry burden at trial. La. C.C.P. art. 966 *37 C(l) & (2). Subsequently, if the adverse party fails to produce factual support to show that he will be able to meet his evidentiary burden of proof at trial, there is no genuine issue of material fact, and the mover is entitled to summary judgment as a matter of law. La. C.C.P. art. 966 C(2). Robinson v. Jefferson Parish Sch. Bd. 08-1224 (La.App. 5 Cir. 4/7/09), 9 So.3d 1035, 1043, citing, Champagne v. Ward, 03-3211 p. 5 (La.1/19/05), 893 So.2d 773, 776-77.
| BLa. R.S. 9:3550 governs the regulation of premium finance companies.[3] Premium finance agreements are agreements entered into by an insured with a premium finance company wherein the insured promises to pay the premium finance company the amount advanced or to be advanced to an insurer, or an insurance broker or agent for payment of premiums on an insurance policy. La. R.S. 9:3550(B)(4).
La. R.S. 9:3550(G) allows a premium finance agreement to contain a power of attorney enabling the premium finance company to cancel any insurance policy when an insured defaults on payments and the premium finance company elects to exercise that authority to effect cancellation of an insurance policy. Stephens v. LeBlanc, 03-1460 (La.App. 1 Cir. 5/14/04), 879 So.2d 262, 264; Hunter v. Automotive Cas. Ins. Co., (La.App. 5 Cir. 9/29/92), 606 So.2d 571, 574, writ denied, 609 So.2d 225.
There must be strict compliance with the following conditions to allow cancellation of an insurance policy under La. R.S. 9:3550(G):
(1) the debtor/insured has defaulted on the premium finance contract;
(2) there is a power of attorney clause in the debtor’s contract with the premium finance company;
(3) the premium finance company has mailed notice of cancellation to the insured and the insured’s insurance agent;
(4) either the premium finance company or the insurer has notified any mortgagee, governmental agency, or other interest third party indicated by the policy and;
(5) after a ten day delay in which the debtor had not made a payment, the premium finance company sent a copy of the notice of cancellation to the insurer, with a statement certifying compliance with 9:3550(G)(3).
Hodges v. Colonial Lloyd’s Ins., (La.App. 1 Cir. 6/20/89), 546 So.2d 898, 902.
The record reveals that, after adequate discovery was conducted, the following facts are undisputed. The insured, KMJ, defaulted on the premium finance contract, which included a valid power of attorney provision. The premium finance company, ICC, mailed notice of cancellation to the insured, KMJ, and the insured’s agent. KMJ failed to make the payment to cure the default. KMJ received all notices and all notices included the necessary certificate certifying compliance with La. R.S. 9:3550 G(3). At all times, GCM was the authorized wholesale broker and agent for all the underwriter insurers who provided varying coverage with different percentage *38 of risk. Notice of cancellation was sent to GCM as the wholesale broker and agent of all insurers under the two policies issued to KMJ. Per agreements with the pool insurers, GCM was authorized to bind the insurers within certain limits and for specific types of coverages, quote premiums, issue policies for such coverage, and handle claims on behalf of the pool insurers. GCM supplemented coverages under the two policies with non-pool insurers. As the wholesale broker for the non-pool insurers, GCM was authorized to confirm coverage, issue binders and certificates of insurance, accept notices of loss and proofs of loss, send the insured notices of cancellation, and receive notices of cancellation from the insured. GCM issued two policies of insurance to KMJ, the Comprehensive General Liability Policy (GCM21662) and the Marine Package Policy (GCM10581). At no time did GCM meet with, speak to, respond to questions from, or directly communicate in any way with KMJ concerning the insurance coverages under the two policies.
ASSIGNMENT OF ERROR NO. 1:
In its first assignment of error, KMJ argues that GCM knew that ICC’s cancellation was ineffective because GCM knew the notice had not been sent to all |7of the insurers providing coverage, namely, Indemnity Insurance of America, Catlin Insurance Co., Markel American Insurance Company and Federal Insurance Company. Thus, GCM’s cancellation of coverage issued to these non-pool insurers was improper because not all insurers received notice of cancellation.
The record and evidence established that GCM was the wholesale broker and agent for the pool insurers and for those insurers not listed on the notice of cancellation (non-pool insurers). GCM therefore had authority to accept notice of cancellation on behalf of the pool insurers (listed) and the non-pool insurers (not listed). KMJ has not challenged GCM’s status as wholesale broker and agent for all of the insurers and this issue was not appealed.
A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal. La. C.C. art. 2989. The mandatary may perform all acts that are incidental to or necessary for the performance of the mandate. La. C.C. art. 2995. The authority granted to a mandatary to perform an act that is ordinarily part of his profession or calling, or an act that follows from the nature of his profession or calling need not be specified. Id. Generally, an agent is one who acts for or in the place of another by authority from the latter. Guidry v. The Hanover Insurance Company, 09-220 (La.App. 5 Cir. 11/10/09), 28 So.3d 426, 429 (citation omitted). An agency relationship may be either expressed or by implied appointment arising from apparent authority. Id.
“Whether an insurance broker, in a transaction, is acting as an agent of the insured or the insurer in a transaction is a question of fact to be determined from the particular circumstances of the case.” McManus v. S. United Fire Ins., 00-1346, p. 6 (La.App. 3 Cir. 3/21/01), 801 So.2d 392, 396-97, citing Tiner v. Aetna Life Ins. Co., 291 So.2d 774 (La.1974); Duhon v. Mid-American Cas. Co., 553 So.2d 1100, 1102 (La.App. 3 Cir.1989). While the determination of whether a duty exists is a question of law, in the instant case, the determination depends on the agency relationship between and among all the parties.
The evidence supported a finding that an agency relationship exists between GCM, the wholesale broker and agent, and the underwriter insurers and therefore, *39 GCM had authority to issue binders and accept notice on behalf of the insurers. GCM has had an ongoing relationship with the insurers. GCM’s status was as the wholesale broker and agent of all insurers underwriting the two policies. GCM, as the undisputed wholesale broker and agent, had authority from all these insurers to accept notice of cancellation. La. R.S. 9:3550(G) does not prohibit notice of cancellation to an insurer through an authorized wholesale broker or agent for the insurer. The notice of cancellation sent by ICC to GCM and received by GCM was notice to all the insurers under the two policies pursuant to wholesale broker and agency relationship established through agreements between GCM and all the insurers. Additionally, La. R.S. 9:3550 does not require ICC to list all the insurers for underlying coverage in this type of insurance policy because as a marine package policy, multiple insurers are often used to cover the various percentages. The fact that all insurers were not listed on the Schedule of Financed Policies and not individually sent notice of cancellation is immaterial because it is undisputed that GCM had authority to receive notice of cancellation, and in fact, received all the requisite notices and cancelled the two policies.
Furthermore, the premium finance agreement is between KMJ and ICC. GCM had no knowledge or input in the content of the agreement between those parties. The premium finance agreement was executed and issued on May 12, 2010. At that time KMJ, through its agent, Ells-worth, was still working with GCM to adjust the various percentages of risk and insurers. Thus, KMJ was clearly |9aware that not all insurers were fisted on the premium finance agreement. There is no evidence in the record that KMJ objected to the omission of those insurers on the premium finance agreement. Additionally, Heidi Sternberg, an ICC employee, testified in her C.C.P. 1442 deposition that it was the internal policy of ICC, when dealing with multiple insurers under one policy, to only fist the lead insurer that has the highest percentage of risk. KMJ has failed to offer any evidence to dispute this testimony.
Considering the reasons stated above, we find that the trial court did not err in finding notice of cancellation to GCM, as wholesale broker and agent, was sufficient notice to all insurers, listed or not fisted on the Schedule of Financed Policies pursuant to La. R.S. 9:3550.
ASSIGNMENT OF ERROR NO. 2:
In its second assignment of error, KMJ argues that ICC’s power of attorney only authorized cancellation of coverage fisted on the Schedule of Financed Policies. KMJ alleges that because GCM used the power of attorney to cancel coverages not fisted on the Schedule of Financed Policies, GCM improperly cancelled coverages issued to KMJ and as a result, KMJ sustained damages.
The premium finance agreement provides in pertinent part:
“in consideration of the premium payments being finance, and if applicable down payment being advanced by Premium Financing Specialists, Inc. (“LENDER”) to the Insurance companies fisted on the SCHEDULE OF FINANCED POLICIES, or their representative, promises to pay to the order of LENDER the TOTAL OF PAYMENTS to be made in accordance with the PAYMENT SCHEDULE and if applicable, the amount of any down payment advanced by LENDER subject to the provisions set forth in this Agreement.”
The agreement further provides that KMJ:
“Irrevocably appoints LENDER Attorney-in-Fact with full authority, in the *40 event of default, to (i) cancel the said policies in accordance |inwith the provisions herein, (ii) receive all sums assigned to LENDER, and (iii) execute and deliver on behalf of the undersigned all documents, forms and notices relating to the insurance policies listed on the SCHEDULE OF FINANCED POLICIES in furtherance of this Agreement.”
KMJ argues that the language is clear and GCM’s authority to cancel coverage, if any, is limited to those insurers listed on the Schedule of Financed Policies. In this case, the Schedule of Financed Policies only listed Pro-Century Insurance Company, XL Specialty Insurance Company, New York Marine & General Insurance Company, and Lloyd’s of London. Thus, KMJ contends GCM only had authority to cancel the listed coverages, and no authority to cancel the remaining coverages that were not listed. As a result, cancellation of all coverages was improper.
The language used in La. R.S. 9:3550 makes clear that the statute deals with cancellation of policies in toto, not cancellation of coverages for percentage of risk by different underwriter insurers under the two policies. Additionally, under the terms of the premium finance agreement, representatives of insurers can be listed instead of the insurers and the agreement refers to policies, not specific coverages under a policy. Furthermore, the premium finance agreement only lists two policies and two policy numbers, the Comprehensive General Liability policy (GCM21662) and the Marine Package Policy (GCM10531).
Here, GCM cancelled the two policies listed on the premium finance agreement. As the wholesale broker and agent of all the underwriter insurers, GCM had authority to receive and accept the notice of cancellation on behalf of the non-listed insurers. The language of La. R.S. 9:3550 does not preclude receipt of notice of cancellation to an insurer through an insurer’s authorized agent.
| ^Accordingly, for the reasons stated above, we find no error in the trial court’s finding that GCM did not improperly cancel the two insurance policies, and that GCM is entitled to judgment as a matter of law. Costs of this appeal are assessed against the appellant.
AFFIRMED

. The trial court granted summary judgment in favor of ICC finding that the premium finance agreement contained a valid and binding power of attorney. KMJ has not appealed this judgment.

. KMJ initially filed suit against ICC, several named underwriter insurers, Ellsworth, Tom Hood and GCM. The trial court previously granted summary judgment in favor of ICC and the named underwriter insurers, dismissing KMJ's case against them. Those judgments have not been appealed by KMJ. Ells-worth and Tom Hood remain defendants in the case.

. At the hearing before the trial court, the parties acknowledged that the premium finance agreement is governed by the Laws of New York regarding cancellation. Plaintiff, KMJ, argued that GCM violated those provisions of the New York statute. KMJ failed to cite any applicable New York statute or jurisprudence to support his argument. KMJ argued, and GCM agreed, that the provisions set forth in La. R.S. 9:3550 are essentially the same as New York law. Subsequently, both parties, as well as the trial court, exclusively relied on Louisiana law to determine if cancellation was proper. Accordingly, this court will make no ruling on this appeal as to the application of New York law and will review all issues on appeal pursuant to Louisiana law.