# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 3, 2025

Lyle W. Cayce
Clerk

———————

No. 24-30646

———————

Kimberly Williams, *Individually and on behalf of all others similarly situated*; Nicholas Jenkins, *Individually and on behalf of all others similarly situated*; Felita Wright,

*Plaintiffs—Appellants*,

*versus*

GoAuto Insurance Company; GoAuto Management Services, LLC; GoAuto, LLC; Auto Premium Assistance Company, LLC; Go Card, LLC; Health Reform Insurance, LLC,

*Defendants—Appellees*.

———————————————————

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:21-CV-92

———————————————————

Before Higginbotham, Jones, and Southwick, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:

This appeal requires us to analyze a Louisiana statute governing the cancellation of insurance policies because of nonpayment to the company that financed the premiums.  Former insureds claim that the insurance company's cancellation procedures did not comply with the statute, resulting in misrepresentations and breach of good faith and fair dealing.  The district

court held there was no statutory violation and dismissed all claims with prejudice. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Kimberly Williams and Felita Wright are former insureds of GoAuto Insurance Company. A third GoAuto insured, not a party here, was involved in an accident with Plaintiff Nicholas Jenkins. Williams, Wright, and the driver involved in Jenkins's accident each financed their GoAuto insurance policy through an agreement with American Premium Assistance Company, LLC ("APAC"). APAC would pay GoAuto the entire premium in return for monthly installment payments from the insureds.

Each financing agreement granted APAC a power of attorney authorizing it to cancel the insurance policies upon a failure to pay the premiums. Each policy was cancelled as a result of nonpayment.

Williams and Jenkins filed a class action lawsuit against GoAuto and APAC in a Louisiana state court, alleging GoAuto had not effectively cancelled their policies and had failed to act in good faith. Wright became an additional plaintiff when an amended complaint was filed. GoAuto removed the case to the United States District Court for the Middle District of Louisiana. The parties filed motions for summary judgment related solely to whether GoAuto's procedure for cancelling the financed insurance policies satisfied Louisiana law. The district court granted GoAuto's motion for summary judgment, holding that GoAuto's procedures complied with state law. As a result, the district court dismissed all claims against GoAuto with prejudice.

Williams, Jenkins, and Wright appealed.

No. 24-30646

## DISCUSSION

The Plaintiffs contend the district court erred by (1) finding that the statutory procedures for delivery of the notice of cancellation were followed, (2) finding GoAuto properly received the cancellation requests, and (3) denying their motion for partial summary judgment. To address these arguments, we begin by setting out Louisiana law for the cancellation of financed insurance policies, then examine GoAuto's procedures for complying with that law.

Under Louisiana law, an insurance-premium finance company may request cancellation of an insurance policy upon an uncured default "by sending to the insurer, by depositing in the mail or with a private carrier, or via electronic mail . . . a copy of the notice of cancellation together with a statement certifying" the following:

> (i) The premium finance agreement contains a valid power of attorney as provided in Paragraph (1) of this Subsection.
> (ii) The premium finance agreement is in default and the default has not been timely cured.
> (iii) Upon default, a notice of cancellation was sent to the insured as provided in Paragraph (2) of this Subsection, specifying the date of sending by the premium finance company to the insured.
> (iv) Copies of the notice of cancellation were sent to all persons shown by the premium finance agreement to have an interest in any loss which may occur thereunder, specifying the names and addresses of any governmental agencies, holders of a security interest in the insured property, or third parties to whom the insurance premium finance company has sent notice of cancellation.

LA. REV. STAT. § 9:3550(G)(3)(a)(i)–(iv).

No. 24-30646

"Louisiana courts require strict adherence to these statutory requirements when a finance company exercises its power of attorney to cancel an insurance policy." *Delatte v. Lemotte*, 633 So. 2d 686, 689 (La. App. 1 Cir. 1993). "[A]ny defect in this process results in an ineffective cancellation of the policy." *Eaglin v. Champion Ins. Co.*, 558 So. 2d 284, 287 (La. App. 3 Cir. 1990). Strict adherence to the statute "serves two functions: (1) it provides a clear method of fixing the exact time and date of cancellation, and (2) it grants a minimum time during which the default may be cured." *Britten v. Reavis*, 503 So. 2d 1149, 1154 (La. App. 3 Cir. 1987).

GoAuto follows the following procedures in order to cancel a policy. When an insured fails to make timely payment, APAC sends notice to the insured that their policy will be cancelled if no payment is submitted within ten days. If no payment is submitted by midnight on the tenth day, APAC's computer system automatically sends GoAuto an e-mail with a copy of the notice of cancellation along with a request for cancellation.

The request for cancellation is sent on APAC's letterhead and states the following:

> APAC certifies that:
>
> (1) The Premium Finance Agreement contains a valid power of attorney.
>
> (2) The Premium Finance Agreement is in default and the default has not been timely cured.
>
> (3) Upon default, a Ten Day Notice of Cancellation was sent to the insured. Copies of the notices are enclosed and the affidavit proof of mailing is available upon request.
>
> (4) Copies of the Ten Day Notice of Cancellation were sent to all persons shown by the Premium Finance Agreement to have an interest in any loss which may occur there under.

No. 24-30646

Upon receipt of that notice, GoAuto's computer system cancels the policy. Later in the morning after cancellation, an APAC employee affixes a signature stamp to the printed cancellation documents. Prior to 2017, an APAC employee would physically take the documents to a filing cabinet shared by GoAuto and APAC.[1] Since 2017, the signed cancellation document is physically taken to a GoAuto employee who stamps the document as "received" and places it in a shared filing cabinet.

### I. Strict Adherence to the Statute

We now consider whether these procedures comply with the Louisiana law we discussed. Key to the Plaintiffs' argument is that no signature is on APAC's certification until soon after, but clearly after, the policy is canceled automatically. The Plaintiffs interpret the statutory requirement of "certifying" by the premium insurer as requiring a signature *before* there can be a cancellation.

The statute makes no explicit reference to a signature. LA. REV. STAT. § 9.3550(G)(3)(a). If there is a need for one, the word "certifying" would have to create such a requirement. With an exception we will discuss, no Louisiana judicial opinion considering insurance-premium finance companies' procedures under the statute has addressed the need for a signature. One court's paraphrase of the statutory requirement was that there must be "a statement certifying compliance with" the statute. *KMJ Servs., Inc. v. Hood*, 12-757, p.5 (La. App. 5 Cir. 4/10/13), 115 So. 3d 34, 37. Another allowed cancellation "[u]pon receipt of such notice of cancellation and statement from the premium finance company." *Hodges v. Colonial*

_____

[1] APAC and GoAuto are separate legal entities that operate out of a shared business office. Employees performing services for both companies are employed by GoAuto Management Services, LLC. For purposes of this appeal, we refer to employees assigned to either business as employees of that company.

*Lloyd's Ins.*, 546 So. 2d 898, 901–02 (La. App. 1 Cir. 6/20/89). Other opinions are similarly unhelpful on this question. *See, e.g.*, *Lewis v. Julien*, 20-152, p. 9–10 (La. App. 5 Cir. 12/16/20), 309 So. 3d 842, 848–50.

One court of appeal opinion mentioned a lack of a signature in a discussion of that notice's shortcomings: the "'notice of cancellation' does not identify any particular employee of [the premium finance company] that prepared the document, is not signed by any individual, and does not purport to 'certify' any of the statements contained therein." *Benitez v. Elsayed*, 19-122, p. 10 (La. App. 5 Cir. 12/4/19), 285 So. 3d 572, 579. That court did not hold the absence of a signature would by itself disqualify the cancellation if other elements were present.

As in *Benitez*, the notices in this record do not identify any particular employee by printed name or by signature. Unlike in *Benitez*, each notice "certifies" the relevant information. Without clearer Louisiana authority, we see no reason that a company cannot certify information without a named employee being identified. The statutory section itself states it is "the insurance premium finance company" who effects cancellation by "certifying" certain information in a notice. LA. REV. STAT. § 9:3550(G)(3)(a). "Strict adherence" to the procedures for cancellation is not an invitation for courts to add to the procedures. We conclude that Louisiana law does not require a signature on the notice sent by the premium finance company to the insurer.

The Plaintiffs also contend GoAuto's procedures do not strictly adhere to the statute because GoAuto never *received* a cancellation request. The statute provides that "[u]pon receipt of such notice of cancellation and statement from the premium finance company, the insurer shall consider that cancellation . . . has been requested . . . and the insurer may proceed to cancel such contract." LA. REV. STAT. § 9:3550(G)(3)(b)(i). Prior to 2017, the

shared filing room where the printed requests were stored belonged to GoAuto Management Services, not GoAuto. Since 2017, according to the Plaintiffs, GoAuto does not receive the requests because the employee who affixes the stamp is an APAC employee. They contend the legislature's use of the word "receipt," as opposed to simply requiring the request be sent, requires GoAuto take possession of the notice before cancelling the policy.

The Louisiana Supreme Court has not defined "receipt" as used in the statute, and the statute itself has no definition. A leading law dictionary defines "receipt" as "[t]he act of receiving something, esp[ecially] by taking physical possession," and "receive" as "[t]o take (something offered, given, sent, etc.); to come into possession of or get from some outside source." *Receipt*, Black's Law Dictionary (12th ed. 2024); *Receive*, Black's Law Dictionary (12th ed. 2024). We accept these definitions and conclude that GoAuto may cancel a policy once it takes possession, delivery, or custody of a request for cancellation.

As we explained, once the e-mailed notice is received in early morning hours by GoAuto's computer system, that computer system cancels the policy. A GoAuto deponent explained how an APAC computer system interacts with a GoAuto web service:

> For instance, during the cancellation process, the APAC process . . . makes a call to a GoAuto web service to request cancellation or perform cancellation for a policy that is canceling on that particular date. . . .

> Basically, a web service is like a listener. It's always listening, waiting to be called, and when it hears its name when it's called, it says, well, tell me what you want to do, and if it understands it, it performs the activity.

No person is involved until later in the morning after the GoAuto computer system effects cancellation. At that later time, an APAC employee uses a signature stamp on the printed cancellation documents.

We summarize our earlier quoting of the statute. What is necessary prior to cancellation is that the insurer had "receipt" of notice of cancellation sent by the premium finance company. LA. REV. STAT. § 9:3550(G)(3)(b)(i). This is a modern statute set in current times, and company computers do much that individuals once did. GoAuto's method of receiving the notice and reacting to it satisfies the statute.

We mention that the district court held GoAuto's cancellation procedures complied with the statute in a different way: "the APAC employee who delivers the notices of cancellation neatly fits the definition of private carrier." The district court recognized an absence of Louisiana case law interpreting "private carrier" and found analogous a panel of this court's explanation of when a railroad was a private carrier. *See Huntley v. Bayer MaterialScience, L.L.C.*, 452 F. App'x 453, 457 (5th Cir. 2011). The district court's definition of "private carrier" was both imaginative and unconventional. Because we find the e-mail satisfies the statute, we will not consider the validity of the definition.[2]

*II. Certification*

The Plaintiffs request we certify these issues of statutory interpretation to the Louisiana Supreme Court. They contend the proper interpretation of the statutory terms is important to Louisiana's insurance industry and statutory scheme.

---

[2] The Plaintiffs also contend the district court erred in denying their motion for summary judgment. Because GoAuto's procedures comply with the statute, the district court did not err in denying their motion.

No. 24-30646

"As a general proposition we are chary about certifying questions of law absent a compelling reason to do so; the availability of certification is such an important resource to this court that we will not risk its continued availability by going to that well too often." *Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1247 (5th Cir. 1997). That a term has not yet been defined by a state supreme court "is not sufficient to warrant certification." *Id.* We decline to certify the question.

AFFIRMED.