| BYRNES, Judge.
In this action involving an automobile accident, Louisiana Insurance Guaranty Association (LIGA), as successor to Colonial Lloyd’s Insurance Company (Colonial Lloyd’s), appeals a judgment finding that Colonial Lloyd’s insurance policy issued to Duy Nguyen was not properly canceled and was in effect at the time of the collision. We affirm.
The accident occurred on December 7, 1989 when Gerald Westberry’s vehicle was struck from the rear by a vehicle owned by Duy Nguyen and operated by Paula Nguyen on Berhman Highway in Jefferson Parish.
On December 6, 1990 Westberry filed a petition for damages against Paula Nguyen, Colonial Lloyd’s, and Fidelity Fire and Casualty Insurance Company, as plaintiffs insurer. The parties filed answers and cross claims.
On September 14, 1993 the trial court denied LIGA’s motion for summary judgment filed on behalf of Colonial Lloyd’s based on the claim that the policy had been canceled effective on November 10, 1989.
Prior to trial plaintiff settled his claims with LIGA as successor to Fidelity Fire and Casualty Insurance Company, plaintiffs insurer.
| gAt the beginning of trial on November 8, 1993, the parties stipulated that: (1) the accident occurred on December 7, 1989; (2) Colonial Lloyd’s had issued a policy to Duy Nguyen for May 19, 1989 to May 19, 1990; (3) Paula Nguyen was an insured driver under the policy; and (4) damages suffered by the plaintiff were in excess of $10,000. The parties agreed that the remaining issue was whether the policy was properly canceled pursuant to La.R.S. 9:3550(G).
LIGA’s appeal followed the trial court’s judgment of December 16, 1993 against LIGA as guarantor of Colonial Lloyd’s and its judgment on quantum dated January 13, 1994 in favor of Westberry for $9,900 in damages plus interest and costs.
LIGA contends that the trial court erred in: (1) denying LIGA’s motion for summary judgment; (2) refusing to admit the affidavit of Aurora Surla as well as the notice of cancellation into evidence at trial; (3) finding that the policy was in effect at the time of the accident; and (4) disregarding the uncontro-verted evidence that the unearned premium was returned to Colonial Lloyd’s pursuant to La.R.S. 9:3550 G(3), thereby discharging Colonial Lloyd’s/LIGA from liability.
*1220 With respect to its motion for summary judgment, LIGA argues that it submitted a sworn affidavit of Aurora Surla as well as notice of cancellation, demonstrating prima facie evidence that the policy had been properly canceled, which proof should have been accepted as conclusive under La.C.C.P. arts. 966 and 967, where no counter affidavits or other evidence was filed by the plaintiff.
Plaintiff filed a memorandum in opposition to LIGA’s motion for summary judgment which contends that LIGA faded to provide evidence of ^service of cancellation to the insurance agent which is required under La. R.S. 9:3550.
The appropriate standard of review for summary judgments on appeal is a de novo review. Reynolds v. Select Properties, Ltd., 93-1480 (La. 4/11/94); 634 So.2d 1180. A party opposing summary judgment need not file affidavits unless the moving party has established both that there is no genuine issue of material fact and he is entitled to judgment as a matter of law. Barnett v. Staats, 25,357 (La.App. 2 Cir. 1/19/94), 631 So.2d 84. Only if movant files sufficient documentation to support the motion, does the burden shift to the opponent who may no longer rest on allegations and denials in his pleadings and who must present evidence showing that material facts are still at issue. Hopkins v. Sovereign Fire & Cas. Ins. Co., 626 So.2d 880 (La.App. 3 Cir.1993), writ denied, 94-0154 (La. 3/11/94), 634 So.2d 390, & 93-2958 (La. 3/11/94), 634 So.2d 402. Under La.C.C.P. art. 967, affidavits shall be made on personal knowledge. Roberts v. Orpheum Corp., 630 So.2d 914 (La.App. 4 Cir.1993). An affidavit must affirmatively show that the affiant is competent to testify to matters stated therein. Aufrichtig v. Progressive Men’s Club of Louisiana, Inc., 25,581 (La.App. 2 Cir. 3/30/94), 634 So.2d 947.
In the present case, the affiant, Aurora Surla, was employed by Sun Premium Finance Company Incorporated, the insurance premium finance company which had a contract with the insured, Duy Nguyen, to advance insurance premiums to Colonial Lloyd’s. In her affidavit Ms. Surla stated that she was manager of Sun Premium Financing and that a cancellation notice was mailed to Duy Nguyen notifying him that the policy would be canceled on November 10, 1989. However, the affiant’s statements do not show that the Laffiant was testifying from her own personal knowledge as required under La.C.C.P. art. 967. Therefore, an issue of material fact existed so that the trial court properly denied summary judgment.
LIGA also argues that the testimony of David Daube, President of Sun Premium Finance Company, and the evidence clearly establish that the subject insurance policy was properly canceled in accordance with La.R.S. 9:3550 G[1]. IsLIGA claims that *1221 Daube was custodian of the records and was qualified to testify about the authenticity of the documents, which were admissible as business records under La.C.E. Art. 803(6).
Plaintiff maintains that Ms. Surla’s affidavit was inadmissible as a business record where LIGA did not show that Ms. Surla was an unavailable witness. Plaintiff also notes that Mr. Daube testified from records which were not part of the original Sun Premium Finance Company’s file.
Louisiana courts prefer strict compliance to the statutory requirements of La.R.S. 9:3550(G) for a valid cancellation of an insurance contract. Eaglin v. Champion Ins. Co., 558 So.2d 284 (La.App. 3 Cir.1990). In Delatte v. Lemotte, 633 So.2d 686 (La.App. 1 Cir.1993), the insurance premium finance company, which did not mail to the automobile insurer a copy of the notice of cancellation, did not satisfy the statutory requirement for canceling the policy even though all information pertaining to the premium finance agreement and notice of cancellation were “stored” in the same computer in filings of systems shared by the insurer and finance company.
In the present case the record shows that Mr. Daube responded to plaintiffs counsel’s questions as follows:
| (A- These [documents] would be from the Colonial file, I assume. I would not usually have in my file anything that would have a Colonial Insurance stamp. It says Colonial, received by Colonial Insurance Facility, so it probably would not be in my file.
Q. So the notice of cancellation, the power of attorney, and the certified letter of cancellation is all from the files of Colonial Lloyds.
A. The documents originated from my office, but I assume would be held in a file by Colonial.
Q. But these copies came from?
A. I don’t know where they came from. I’m assuming.
Q. My question is these copies did not come from your file.
*1222 A. Correct.
Considering that Mr. Daube could not say that the documents came from his files, the business records introduced by LIGA were not properly authenticated. LIGA failed to show conclusively that it strictly complied with the requirements of La.R.S. 9:3550. The trial court correctly found that there was insufficient proof that the insurance policy was properly canceled and therefore was in effect at the time of the accident, making LIGA liable as Colonial Lloyd’s successor.
Accordingly, the judgment of the trial court is affirmed.

AFFIRMED.

. At the time of the alleged policy cancellation, La.R.S. 9:3550 G provided:
G. Insurance contracts may be cancelled upon default as follows:
(1) When a premium finance agreement contains a power of attorney enabling the insurance premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be cancelled by the insurance premium finance company unless such cancellation is effectuated in accordance with this Subsection.
(2) Upon default of insurance premium contract by the debtor, the premium finance company may mail a notice of cancellation to the insured, at his last know address as shown on the records of the insurance premium finance company. A copy of the notice of cancellation of the insurance contract shall also be mailed to the insurance agent negotiating the related insurance contract whose name and place of business appears on the premium finance agreement. Such notice of cancellation shall show the name of any government agency, mortgagee or third party also requiring notice of cancellation as shown on the insurance premium finance contract.
(3)Ten days after notice of cancellation has been mailed to the insured, if the default has not been cured, the insurance premium finance company may thereafter effect cancellation of such insurance contract or contracts by mailing to the insurer a copy of the notice of cancellation together with a statement certifying that:
(a) The premium finance agreement contains a valid power of attorney as provided in paragraph (1) above;
(b) The premium finance agreement is in default and the default has not been timely cured;
(c) Upon default, a notice of cancellation was mailed to the insured as provided in paragraph (2) above, specifying the date of mailing by the premium finance company to the insured; and
(d) Copies of the notice of cancellation were mailed to all persons shown by the premium finance agreement to have an interest in any loss *1221 which may occur thereunder, specifying the names and addresses of any governmental agencies, mortgagees or third parties to whom the insurance premium finance company has sent notice of cancellation.
Upon receipt of such notice of cancellation and statement from the premium finance company, the insurer shall be entitled to consider that cancellation of the insurance contract or contracts has been requested by the insured but without requiring the return of the insurance contract or contracts and the insurer may proceed to cancel such contract or contracts as provided in R.S. 22:637. The effective date of cancellation shall be as of 12:01 A.M. on the tenth day after the date of mailing of the notice of cancellation as shown in said statement furnished to the insurer by the premium finance company.
The receipt of such notice and statement by the insurer shall create a conclusive presumption that the facts stated in said notice and statement are correct, that the insurer is entitled to rely on such facts and that the cancellation of the insurance contract or contracts is concurred in and authorized by the insured. No liability of any nature whatsoever either in favor of the insured, any governmental agency, mortgagee or third party shall be imposed upon the insurer as a result of any misstatement of fact contained in said notice of cancellation or statement furnished by the insurance premium finance company to the insurer, or as a result of failure by the insured, any governmental agency, mortgagee or third party to receive the notice of cancellation required by paragraph (2) above, or as a result of failure of the insurance premium finance company to comply with any of the requirements of this Subsection. Upon mailing of any unearned premium to the insurance premium finance company as soon as practicable following such cancellation, the insurer shall be full discharged from all liability under the insurance contract or contracts for any loss occurring subsequent to the effective date of cancellation.
(4) Upon receipt of the notice of cancellation, the insurer shall give notice to any other governmental agency, mortgagee, or other third party as shown in the records of the insurer requiring statutory, regulation or contractual notice and which were not given by the premium finance company as provided in (3) above. The insurer shall give the prescribed notice on behalf of itself or the insured to any governmental agency, mortgagee, or third party on or before the fifth business day after the day it receives a copy of the notice of cancellation from the insurance premium finance company and shall determine the effective date of cancellation taking into consideration the number of days notice required to complete the cancellation if such notice is given by the insurer, otherwise the effective date of cancellation shall be calculated from the date the premium finance company mailed the notice to such governmental agency, mortgagee, or other third party taking into consideration the number of days notice required to complete the cancellation.