MARION F. EDWARDS, Judge.
 

 12Plaintiffs/appellants, Betty Clay (“Clay”) and Charles B. Thomas, appeal a summary judgment in favor of defendant/appellee, USAgencies Casualty Insurance Company (“USAgencies”). On October 5, 2007, appellants’ deceased sister, Cheryl Mayer, was hit by a car driven by defendant, Denise Entwisle (“Entwisle”). Appellants are the surviving siblings of Mayer, who died without any surviving ascendants, descendants, or spouse. A wrongful death suit was filed against Ent-wisle and her unknown insurer, and the suit was later amended to include USA-gencies as Entwisle’s insurer. USAgen-cies conceded that it had issued a policy to Entwisle, which had been financed through a premium finance company, LIFCO, Inc.
 
 *421
 
 (“LIFCO”), but it argued that the policy had been cancelled prior to the accident.
 

 USAgencies filed a Motion for Partial Summary Judgment, seeking dismissal of all claims against it. Clay apparently concedes that Entwisle failed to pay the monthly premium timely but opposed the motion on the grounds that |sUSAgencies failed to provide sufficient evidence that all of the technical requirements for policy cancellation provided for in La. R.S. 9:3550 had been met.
 

 At the hearing on the motion, USAgen-cies submitted a copy of Entwisle’s insurance application and insurance policy with USAgencies. It also submitted a copy of the finance agreement between Entwisle and LIFCO, which included a power of attorney authorizing LIFCO to cancel the policy in the event of non-payment of an installment; a copy of the ten-day notification of cancellation sent to Entwisle; an affidavit of proof of mailing the notification; and a copy of a request by LIFCO to USAgencies for cancellation of the policy due to non-payment. That notification to USAgencies included a certification that:
 

 The premium finance agreement contained a valid power of attorney;
 

 The premium finance agreement was in default and the default had not been timely cured;
 

 A ten-day notice of cancellation and the affidavit of proof of mailing was mailed to the insured, copies of which were enclosed; and
 

 Copies of the 10 day Notice of Cancellation were mailed to all persons shown in the agreement to have an interest in any loss which may occur thereunder.
 

 USAgencies also submitted an affidavit from Angela Pittman, employed by USA-gencies and responsible for implementing the process of cancellation due to nonpayment of installments owed to LIFCO, verifying the terms of Entwisle’s finance agreement and that cancellation notices were sent as outlined above. The affidavit further confirmed that Entwisle had not made payment prior to the cancellation date and that LIFCO had requested cancellation of that policy. An affidavit from Janet Goins, also employed by USAgen-cies, verified that LIFCO did make a written request to USAgencies to cancel the policy due to non-payment of premium, that USAgencies did cancel the policy effective July 25, 2007 at 12:01 |4a.m., and that, after a diligent search of the records, no policy of insurance was in existence with that company on the date of the accident.
 

 Following the hearing on the motion, the matter was taken under advisement in order to review the exhibits submitted at the hearing. On September 4, 2009, the court granted summary judgment in favor of USAgencies, dismissing the claims against it. The court found that the cancellation procedure was proper and that USAgen-cies effectively cancelled the policy well prior to the date of the accident. The court further held that the policy would have elapsed by its own terms on September 15, 2007.
 

 Clay appeals, urging that there was no evidence that LIFCO mailed the notice of cancellation to USAgencies, that USAgen-cies mailed the unearned premium to LIF-CO, or that USAgencies notified the Office of Motor Vehicles (“OMV”) of the cancellation, all as required by the statute.
 

 A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). The summary judgment procedure is favored and is designed to se
 
 *422
 
 cure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). Appellate courts review a judgment granting or denying a motion for summary judgment
 
 de novo.
 

 [1]
 

 Thus, appellate courts ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a |r,matter of law.
 
 [2]
 
 Interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved by a motion for summary judgment.
 
 [3]
 

 La. R.S. 9:3550 applies to any person engaged in the business of financing insurance premiums for consumers entering into premium finance agreements or otherwise acquiring premium finance agreements. La. R.S. 9:3550(G)-(H) states:
 

 G. Insurance contracts may be canceled upon default as follows:
 

 (1) When a premium finance agreement contains a power of attorney enabling the insurance premium finance company to cancel any insurance contract, or contracts, or endorsements listed in the agreement, the insurance contract, or contracts, or endorsements shall not be canceled by the insurance premium finance company unless such cancellation is effectuated in accordance with this Subsection.
 

 (2) Upon default of the insurance premium finance agreement by the debtor, the premium finance company shall mail or send an electronic notice of cancellation to the insured, at his last known mailing or electronic address as shown on the records of the insurance premium finance company. In the event the default is not timely cured as provided herein and the insurance policy is canceled pursuant to the terms of the insurance premium finance agreement, a copy of the notice of cancellation of the insurance contract shall also be sent to the insurance agent negotiating the related insurance contract whose name and place of business appears on the insurance premium finance agreement. Such notice of cancellation shall also state the name of any governmental agency, holder of a security interest in the insured property, or third party also requiring notice of cancellation as shown on the insurance premium finance agreement.
 

 (3)(a) Ten days after notice of cancellation has been mailed to the insured, or fourteen days when notice is sent from outside of this state, if the default has not been cured, the insurance premium finance company may thereafter effect cancellation of such insurance contract, or contracts, or endorsements by sending to the insurer, by depositing in the mail or with a private carrier, or via electronic mail, within five business days after the date of cancellation, except when the payment has been returned | (¡uncollected, a copy of the notice of cancellation together with a statement certifying that:
 

 (i) The premium finance agreement contains a valid power of attorney as provided in Paragraph (1) of this Subsection.
 

 (ii) The premium finance agreement is in default and the default has not been timely cured.
 

 
 *423
 
 (iii) Upon default, a notice of cancellation was sent to the insured as provided in Paragraph (2) of this Subsection, specifying the date of sending by the premium finance company to the insured.
 

 (iv) Copies of the notice of cancellation were sent to all persons shown by the premium finance agreement to have an interest in any loss which may occur thereunder, specifying the names and addresses of any governmental agencies, holders of a security interest in the insured property, or third parties to whom the insurance premium finance company has sent notice of cancellation.
 

 (b)(i) Upon receipt of such notice of cancellation and statement from the premium finance company, the insurer shall consider that cancellation of the insurance contract or contracts has been requested by the insured but without requiring the return of the insurance contract or contracts and the insurer may proceed to cancel such contract or contracts as provided in R.S. 22:885. The effective date of cancellation shall be as of 12:01 a.m. on the tenth day after the date of sending of the notice of cancellation as shown in said statement furnished to the insurer by the premium finance company.
 

 (ii) The time period between the date of the late notice and notice of cancellation was sent shall commence upon the date the late notice is sent.
 

 [[Image here]]
 

 (c) The receipt of such notice of cancellation and statement by the insurer shall create a conclusive presumption that the facts stated in said notice and statement are correct, that the insurer is entitled to rely on such facts and that the cancellation of the insurance contract or contracts is concurred in and authorized by the insured. No liability of any nature whatsoever either in favor of the insured, any governmental agency, holder of a security interest in the insured property, or third party shall be imposed upon the insurer as a result of any misstatement of fact contained in said notice of cancellation or statement furnished by the insurance premium finance company to the insurer, or as a result of failure by the insured, any governmental agency, holder of a security interest in the insured property, or third party to receive the notice of cancellation required by Paragraph (2) of this Subsection, or as a result of failure of the insurance premium finance company to comply 17with any of the requirements of this Subsection. Upon mailing of any unearned premium and unearned commission to the insurance premium finance company as soon as practicable following such cancellation, the insurer shall be fully discharged from all liability under the insurance contract or contracts for any loss occurring subsequent to the effective date of cancellation.
 

 (4) Upon receipt of the notice of cancellation, the insurer shall give notice to any governmental agency, holder of a security interest in the insured property, or other third party as shown in the records of the insurer requiring statutory, regulation, or contractual notice and which were not given by the premium finance company as provided in Paragraph (8) of this Subsection. The insurer shall give the prescribed notice on behalf of itself or the insured to any governmental agency, holder of a security interest in the insured property, or third party on or before the fifth business day after the day it receives a copy of the notice of cancellation from the insurance premium finance company and shall determine the effective date of cancellation taking into consideration the number of days notice required to com-
 
 *424
 
 píete the cancellation if such notice is given by the insurer, otherwise the effective date of cancellation shall be calculated from the date the premium finance company sent the notice to such governmental agency, holder of a security interest in the insured property, or other third party taking into consideration the number of days notice required to complete the cancellation.
 

 H. Whenever the financed insurance contract, or contracts, or endorsements are canceled, the insurer shall return whatever unearned premiums and unearned commissions that are due under the insurance contract to the insurance premium finance company for the account of the insured or insureds as soon as reasonably possible but in no event shall the period for payment exceed sixty days after the effective date of cancellation. In the event that the crediting of return premiums and commissions to the account of the insured results in a surplus over the amount due from the insured, the insurance premium finance company shall refund such excess to the insured within sixty days of receipt of the proceeds from the insurer unless the commissioner grants, upon a showing of good cause, an extension pursuant to a request for additional time, provided that no such refund shall be required if it amounts to less than one dollar, or to the extent provided by federal law. The parties to an insurance premium finance agreement may agree that the unearned premiums and unearned commissions may be retained by or paid to the insurance company in order to purchase continued coverage under the insurance | ^contract. In such event, the insurance premium finance company shall only retain the funds necessary to pay the amount required to pay the insurance premium finance agreement in full and shall transfer such excess funds to the insurance company in a timely manner to assure that the insurance coverage is not terminated. When the insurance agent provides proof that any check, money order, bank draft, or other means of payment used to pay the down payment was returned by the financial institution for whatever reason, the refund of surplus funds shall be made from the lender to the agent. The refund shall be made payable to both the agent and the insured.
 

 In the present case, the Power of Attorney given by Clay to LIFCO stated:
 

 I give you a power of attorney. If I fail to pay even one installment on the Promissory Note, I authorize you to cancel my Insurance Policy.... I give a power of attorney to notify my Insurance Company and any persons entitled to notice and to tell them that my Insurance Policy is cancelled. After payment of all amounts due to you under this Contract, I also give you power of attorney to pay to the Insurance Company (or allow the Insurance Company to retain) any unearned premiums or other amounts which the Insurance Company may otherwise owe me in order to purchase as much continued coverage under the Insurance Policy as such funds permit, until such time as I prove to the Insurance Company that I have purchased replacement insurance, as required by law or as required by any other person entitled to the benefit of coverage. I may not revoke this power of attorney while my Promissory note remains unpaid and until I have provided such replacement insurance.
 

 Clay asserts on appeal that there is no proof in the record that LIFCO mailed notice of the cancellation to USAgencies, citing the First Circuit case of
 
 Delatte v.
 
 
 *425
 
 Lemotte,
 
 [4]
 
 There, the court found the mailing requirement in the statute “is a critical step in the cancellation process.” That case is inapplicable on more than one level. The statute has since been amended to allow transmission of the copy of the notice of cancellation to be made in the mail
 
 or
 
 with a private carrier
 
 or
 
 by electronic mail. Further, the parties in
 
 De-latte
 
 stipulated that the premium finance 13company did not mail the notice or certificate of compliance, so that the required documents were not “sent” to the insurer. The critical issue still appears to require the documents be “sent.” LIFCO could send to USAgencies a copy of the notice of cancellation along with certain certifications, either by U.S. Mail, private delivery, or electronic mail. Receipt of the required documents creates a presumption in favor of the insurer. In this case, the exhibits submitted by USAgencies clearly demonstrate that LIFCO did comply with the statutory notice requirements. The affidavits of Angela Pittman and Janet Goins were based on personal knowledge and reference various notification documents, including the ten-day notification of cancellation mailed to Entwisle; the affidavit of proof of mailing that notification; the copy of the written request sent by LIFCO to USAgencies for cancellation of the policy due to non-payment; and the receipt of such request by USAgencies.
 

 Clay further asserts that there was no evidence that LIFCO notified the OMV of the cancellation, referencing La. R.S. 32:863.2(A)(2). La. R.S. 9:3550(G)(3)(c) states, in relevant part, that the insurer is entitled to rely on the facts transmitted by the premium finance company, and no liability of any nature whatsoever in favor of the insured shall be imposed upon the insurer as a result of the failure of any governmental agency to receive a required notice of cancellation. According to the statute, valid cancellation as to the insured is not dependent upon notice to the OMV. Further, according to La. R.S. 32:863.2(B), the penalty for failure to notify the OMV is a fine as provided for in 32:863.2(B).
 

 Additionally, Clay urges the cancellation was ineffective because there was no evidence that USAgencies mailed the unearned premium to LIFCO. In addition to requiring the insurer to return any unearned premiums or commissions due under the finance contract, La. R.S. 9:3550(H) provides that the parties to an | ^insurance premium finance agreement may agree that the unearned premiums and unearned commissions may be retained by or paid to the insurance company in order to purchase continued coverage under the insurance contract. Here, the power of attorney executed by Clay did just that, stating:
 

 After payment of all amounts due to you under this contract, I also give you power of attorney to pay to the insurance company (or allow the insurance company to retain) any unearned premiums or other amounts which the insurance company may otherwise owe me, in order to purchase as much continuing coverage under the insurance policy as such firms permit, until such time as I prove to the insurance company that I have purchased replacement insurance, as required by law or as required by any other person entitled to the benefit of coverage.
 

 Under the provisions of the power of attorney, Clay granted authority to either pay USAgencies any unearned premiums or allow it to retain such premiums or other amounts that may be owed, pending proof to USAgencies that replacement in
 
 *426
 
 surance has been purchased. Clay did not argue nor offer evidence that she complied with the requirement. In the present circumstances, return of any unearned premiums was not required to effect cancellation.
 

 On our
 
 de novo
 
 review, we find that the trial court correctly found there was no issue of material fact that the policy had been cancelled and that USAgencies was entitled to summary judgment. Because of this finding, it is unnecessary to address the issue of the policy’s expiration on its own terms.
 

 For the foregoing reasons, the judgment is affirmed.
 

 AFFIRMED.
 

 [1]
 

 .
 
 Bonin v. Westport Ins. Corp.,
 
 05-0886 (La.5/17/06), 930 So.2d 906, 910.
 

 [2]
 

 .
 
 Cutsinger v. Redfern,
 
 08-2607 (La.5/22/09), 12 So.3d 945 (citing
 
 Smith v. Our Lady of the Lake Hosp.,
 
 93-2512 (La.7/5/94), 639 So.2d 730).
 

 [3]
 

 .
 
 Id.
 

 [4]
 

 . 633 So.2d 686 (La.App. 1 Cir.1993).